Robert E. HARTLINE et al., Plaintiffs,

v.

SHEET METAL WORKERS' NA-
TIONAL PENSION FUND et
al., Defendants.

No. Civ.A.1998–1274 RMU.

United States District Court,
District of Columbia.

Sept. 14, 2000.

George Michael Chuzi, Kalijarvi, Chuzi & Newman, P.C., Washington, DC, David S. Preminger, Rosen, Szegda, Preminger & Bloom, New York City, for Plaintiffs.

Steuart Hill Thomsen, Nicholas Theodore Christakos, Anthony J. Costantini, Sutherland, Asbill & Brennan, L.L.P., Washington, DC, David R. Levin, Kilpatrick Stockton, LLP, Washington, DC, Marc Harold Rifkind, I, Slevin & Hart, P.C., Washington, DC, Franklin K. Moss, Spivak, Lipton, Watanabe, Spivak & Moss, New York City, for Defendants.

## MEMORANDUM OPINION

URBINA, District Judge.

GRANTING THE TRUSTEE DEFENDANTS' MOTION TO DISMISS; GRANTING THE SMWIA DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART THE PLAINTIFFS' MOTION TO AMEND THE COMPLAINT; DENYING THE PLAINTIFFS' MOTION TO ORDER SETTLEMENT DISCUSSIONS AND STAY THE PENDING MOTIONS

### I. INTRODUCTION

This ERISA matter is before the court on a motion to dismiss filed by defendants

**4**

Sheet Metal Workers' International Association ("SMWIA") and Arthur Moore, in his capacity as President of the SMWIA (collectively, "the SMWIA defendants"), a motion to dismiss filed by defendants Board of Trustees of the Sheet Metal Workers' National Pension Fund ("Board of Trustees"), Arthur Moore, Matthew B. Hernandez, Jr., Clinton O. Gowan, Jr., Bruce Stockwell, Alan J. Chermak, Ronald Palmerick, and the Estate of Gordon Jones (collectively, with the Board of Trustees, "the Trustee defendants"), a motion for leave to file a second amended complaint filed by plaintiffs Robert E. Hartline, Eugene Hintz, Ronald W. McCarthy, Joseph Valdastri, and Eurie Williams (collectively, "the named plaintiffs"), and the named plaintiffs' motion to refer this action to a magistrate judge for settlement discussions and to stay consideration of the pending motions to dismiss during such discussions.

The named plaintiffs bring this consolidated action on behalf of themselves and on behalf of a class of all others similarly situated (collectively, with the named plaintiffs, "the plaintiffs") under sections 502(a)(1)(B), (a)(2), (a)(3) and 510 of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B), (a)(2), (a)(3) and § 1140, against the Sheet Metal Workers' National Pension Fund (the "Pension Fund"), the Trustee defendants, and the SMWIA defendants. This court has subject matter-jurisdiction pursuant to ERISA section 502(e), 29 U.S.C. § 1132(e). This court has supplemental jurisdiction over any other claims pursuant to 28 U.S.C. § 1367(a). For the reasons stated herein, this court grants the Trustee defendants' motion to dismiss, grants the SMWIA defendants' motion to dismiss, grants in part and denies in part the plaintiffs' motion for leave to file a second amended complaint, and denies the plaintiffs' motion for referral to

a magistrate judge for settlement discussions and for a stay of consideration of the pending motions during such discussions.

## II. BACKGROUND

### A. Facts

The named plaintiffs are retired employees of three different employer-participants in the Pension Fund. (Am. Compl.¶¶ 5–11.) Each named plaintiff also is a member of a local union affiliated with the SMWIA and, at some time prior to their respective retirements, worked under the auspices of his respective local union. (Am.Compl.¶ 10.) Each named plaintiff has been a participant and beneficiary of the Pension Fund within the meaning of ERISA sections 3(7) and 3(8), 29 U.S.C. §§ 1002(7) and 1002(8), and is currently receiving a retirement pension from the Pension Fund. (Am.Compl.¶ 11.)

The Pension Fund is an employee benefit plan within the meaning of ERISA section 3(3), 29 U.S.C. § 1002(3), an employee pension benefit plan within the meaning of ERISA section 3(2), 29 U.S.C. § 1002(2), a defined benefit plan within the meaning of ERISA section 3(35), 29 U.S.C. § 1002(35), and a multiemployer pension fund within the meaning ERISA section 3(37)(A), 29 U.S.C. § 1002(37)(A). (Am.Compl.¶ 12.) The plaintiffs allege no substantive wrongdoing by the Pension Fund and have named the Pension Fund "solely for the purpose of relief." (Am.Compl.¶ 12.)

The Board of Trustees of the Pension Fund is comprised of natural persons, half of whom have been appointed by the SMWIA and half of whom have been appointed by employers who contribute to the Pension Fund. (Am.Compl.¶ 13.) The Board of Trustees as an entity is a fiduciary within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A). (Am. Compl.¶ 13.) Defendants Arthur Moore,

Matthew B. Hernandez, Jr., Clinton O. Gowan, Jr., Bruce Stockwell, Alan J. Chermak, Ronald Palmerick, Robert J. Fanning, Cavet Snyder, Robert Custer, Ronald Simpson, Gordon Jones and Edward J. Carlough allegedly were directly responsible for the administration and operation of the Pension Fund, are or were members of the Board of Trustees and are or were fiduciaries within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A). (Am.Compl.¶ 14.)

The SMWIA is a labor organization within the meaning of Labor Management Relations Act section 201(5), 29 U.S.C. § 1002(5), and is the current or former employer of certain named plaintiffs and members of the putative class. (Am. Compl.¶ 16.) The SMWIA is affiliated with many local unions throughout the United States (the "locals"), each of which bargains collectively with employers in its jurisdiction on behalf of its members, who also are members of the SMWIA. (Am. Compl.¶ 21.) The collective bargaining agreements entered into by the majority of the locals require the signatory employers to contribute to the Pension Fund on behalf of their employees who are members of the local. (Am.Compl.¶ 21.) The contribution rate varies from one local to another. (Am.Compl.¶ 21.)

The Pension Fund also receives contributions from employers that are not parties to collective bargaining agreements but that are related to SMWIA (the "Related Employers"). (Am.Compl.¶ 23.) The Related Employers include the SMWIA, the National Training Fund for the Sheet Metal & Air Conditioning Industry ("NTF") and the National Energy Management Institute ("NEMI"). (Am. Compl.¶ 23.) The Related Employers have employees who are both members and non-members of the SMWIA. (Am. Compl.¶ 23.) Related Employers contrib-

ute to the Pension Fund pursuant to "Participation Agreements" rather than collective bargaining agreements. (Am. Compl.¶ 24.) The Pension Fund's Board of Trustees allegedly unilaterally sets the contribution rates to be paid by the Related Employers. (Am.Compl.¶ 24.) The Trustee defendants set non-uniform contribution rates for the SMWIA, the NTF and the NEMI to pay on behalf of their SMWIA-member employees. (Am. Compl.¶ 24.) The contribution rate paid on behalf of any such employee is the rate established by collective bargaining by that employee's "home local union." (Am. Compl.¶ 25.) The SMWIA makes no Pension Fund contributions on behalf of any SMWIA employee whose local union has not negotiated for employers in its jurisdiction to make Pension Fund contributions and, therefore, such employees are ineligible for Fund benefits. (Am. Compl.¶ 26.) The NTF makes Pension Fund contributions on behalf of any NTF employee whose local union has not negotiated to require employers in its jurisdiction to make Pension Fund contributions. (Am.Compl.¶ 26.) However, the NTF makes such contributions at a rate arbitrarily selected by the Defendants. (Id.) The plaintiffs contend that this system sets contribution rates and, therefore, pension amounts, without any relation to a participant's employer, job, duties, or salary. (Am.Compl.¶ 26.)

The plaintiffs assert eight claims. They assert the first, second, third, fifth, seventh, and eighth claims only against the Trustee defendants, and the fourth and sixth claims only against the SMWIA defendants. The plaintiffs contend that the Trustee defendants breached their fiduciary duty under ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1), by establishing non-uniform. Pension Fund contribution rates for contributions by the plaintiffs' former employers on behalf of the plaintiffs. (Am.

**6**

Compl. Claims 1, 2 and 3.) The plaintiffs ask that the pension plan be reformed to provide higher pension benefit levels. (*Id.*) The plaintiffs further assert that the Trustee defendants acted arbitrarily and capriciously in setting contribution rates that the SMWIA, the NTF and the NEMI would pay on behalf of class members. (Am.Compl. ¶ 29.) The plaintiffs contend that the contribution rate system creates a disparity in pension-benefit computations among the class and that the disparity: (1) is not required by any provision of the Pension Fund or ERISA, (2) bears no rational relation to any legitimate purpose of the Pension Fund and (3) is antithetical to the fiduciary requirements of ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1). (Am.Compl. ¶ 29.) The plaintiffs allege that employers of certain SMWIA, NTF, and/or NEMI employees contributed at the "Maximum Contribution Rate"—the prevailing highest contribution rate paid by any employer contributing to the Pension Fund—and, therefore, those employees will receive pension benefits based on that rate. (Am.Compl. ¶¶ 18 and 30.) The plaintiffs seek permanent injunctive relief reforming the Pension Fund to require that the pension-benefit calculation for class members be based on the Maximum Contribution Rate. (Am.Compl.¶ 31.)

The plaintiffs also allege that the SMWIA, at the direction of Arthur Moore, stopped contributing to the Pension Fund on behalf of its participating employees. (Am.Compl. ¶ 34, Claim 4.) The plaintiffs claim this action by the SMWIA violates ERISA section 510, 29 U.S.C. § 1140, because it was in retaliation for the commencement of the instant action. (Am. Compl. ¶¶ 36 and 37.)

The plaintiffs contend that the Trustee defendants' failure and refusal to seek the payment of contributions due from the SMWIA constitutes a breach of their fidu-ciary duties. (Am.Compl. ¶¶ 38 and 39; Claim 5.) According to the plaintiffs, the SMWIA contributed for 1,400 hours of employment per year rather than the actual 2,080 hours for which all other contributing employers pay; in addition, the plaintiffs allege that the SMWIA paid contributions in a one-time annual payment rather than monthly as did all other contributing employers, and never paid interest on the delinquent contributions. . (Am.Compl. ¶¶ 40 and 41; Claim 6.) The plaintiffs assert that the Trustee defendants breached their fiduciary duties by not attempting to collect contributions from the SMWIA based on all hours for which its employees were paid and by not attempting to collect interest from the SMWIA for its delinquent contributions or to enforce a monthly payment schedule. (Am.Compl. ¶ 42, Claim 7.)

The plaintiffs further maintain that Arthur Moore and other Board members are in an incurably conflicted position because they caused SMWIA to stop its Pension Fund contributions and/or acquiesced to SMWIA's stopping of contributions. (Am. Compl. ¶ 43; Claim 8.)

The plaintiffs seek, *inter alia*, that the court: (1) certify this action as a class action, (2) declare that the Pension Fund's terms violate ERISA, (3) reform the Pension Fund retroactively to the first Participation Agreement between the Pension Fund and the SMWIA, the NTF or the NEMI to require that each class member receive benefits calculated from the Maximum Contribution Rate, (4) order the defendants to pay pension benefits prospectively to all class members pursuant to the reformed Pension Fund and (5) order the defendants to pay retroactive pension benefits to all class members who already have received pension benefits. (Am. Compl., Prayer for Relief.)

## B. Procedural History

This case was transferred to this court from the Eastern District of New York on May 21, 1998 pursuant to 28 U.S.C. § 1404(a) upon the defendants' motion. On August 27, 1998, this court denied without prejudice the defendants' pending motions to dismiss ("August 27, 1998 Order"). On May 4, 1999, upon considering the parties' cross-motions, this court ruled that it "will engage in an independent analysis of the plaintiffs' claims using as binding precedent the decisions of the Court of Appeals of the District of Columbia Circuit and the Supreme Court only." ("May 4, 1999 Order.")

On June 29, 1999, the Trustee defendants moved to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("TDs' Mot. to Dismiss"). On August 5, 1999, the plaintiffs opposed the Trustee defendants' motion to dismiss ("Opp'n to TDs' Mot. to Dismiss"). On September 13, 1999, the Trustee defendants replied to the plaintiffs' opposition to the Trustee defendants' motion to dismiss ("TDs' Reply").

On June 29, 1999, the SMWIA defendants also moved to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("SDs' Mot. to Dismiss"). On August 5, 1999, the plaintiffs opposed the SMWIA defendants' motion to dismiss ("Opp'n to SD's Mot. to Dismiss"). On September 13, 1999, the SMWIA defendants replied to the plaintiffs' opposition to the SMWIA defendants' motion to dismiss ("SDs' Reply").

On August 5, 1999, in the plaintiffs' opposition to the Trustee defendants' motion to dismiss, the plaintiffs moved to amend their complaint and to file a second amended complaint with respect to the claims against the Trustee defendants, that is, the first, second, third, fifth, seventh and eighth claims. (Opp'n to TDs' Mot. to Dismiss at 44.) On September 13, 1999, the Trustee defendants opposed the plaintiffs' request to amend the amended complaint. (TDs' Reply at 24.)

On August 5, 1999, in the plaintiffs' opposition to the SMWIA defendants' motion to dismiss, the plaintiffs also moved to amend their complaint and to file a second amended complaint with respect to the claims against the SMWIA defendants, that is, the fourth and sixth claims. (Opp'n to SDs' Mot. to Dismiss at 20–21.) The SMWIA defendants did not oppose the plaintiffs' motion.

On December 22, 1999, the plaintiffs moved to refer this matter to a magistrate judge for settlement discussions and to stay consideration of the pending motions during such discussions ("Mot. for Settlement Discussions"). On January 3, 2000, the SMWIA defendants opposed this motion for settlement discussions ("SDs' Opp'n to Mot. for Settlement Discussions"). Likewise, on January 4, 2000, the Trustee defendants opposed the motion ("TDs' Opp'n to Mot. for Settlement Discussions"). On January 11, 2000, the plaintiffs replied in support of their motion for settlement discussions ("Reply in Supp. of Mot. for Settlement Discussions").

## III. LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief can be granted tests not whether the plaintiff will prevail on the merits, but instead whether the claimant has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); FED. R.CIV.P. 12(h)(6). The court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73,

104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In deciding such a motion, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiffs' favor. *See Metropolitan Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noise,* 501 U.S. 252, 264, 111 S.Ct. 2298, 115 L.Ed.2d 236 (1991); *Talenti v. Clinton,* 102 F.3d 573, 574 (D.C.Cir.1996); *accord Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir.1996). While the court must accept all well-pled allegations of fact, allegations that are overbroad and unsupported by specific factual averments are insufficient to state a claim upon which relief may be granted. *See DeVoren Stores, Inc. v. Philadelphia,* 1990 WL 10003, *1, *3 (E.D.Pa.1990); *Crowder v. Jackson,* 527 F.Supp. 1004, 1006 (W.D.Pa.1981). In addition, the court need not accept as true the plaintiffs' legal conclusions. *See Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Taylor v. F.D.I.C.,* 132 F.3d 753, 762 (D.C.Cir.1997). Nor need the court accept unsupported assertions, unwarranted inferences or sweeping legal conclusions cast in the form of factual allegations. *See Miree v. DeKalb County,* 433 U.S. 25, 27, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). In addition, the court need not assume the existence of facts that would eliminate a defense. *See Droppleman v. Horsley,* 372 F.2d 249 (10th Cir.1967); *Johnson v. MacCoy,* 278 F.2d 37 (9th Cir.1960). The court may consider the allegations of the complaint, documents attached to or specifically referred to in the complaint, and matters of public record. *See* 5A Wright & Miller, *Federal Practice & Procedure* § 1357 at 299 (2d ed.1990).

## IV. ANALYSIS

### A. The Trustee Defendants' Motion to Dismiss

The amended complaint alleges that the Trustee defendants breached their fiduciary duty under ERISA section 404(a)(1) by: (1) establishing non-uniform contribution rates (Am.Compl. Claims 1, 2, and 3); (2) failing to seek payment on overdue contributions (Am.Compl. Claim 5); and (3) not attempting to collect contributions from the SMWIA based on the hours for which its employees were paid and for not collecting interest for delinquent contributions or enforcing a monthly payment schedule (Am.Compl. Claim 7.). The plaintiffs also assert that the Trustee defendants should be removed from the Board of Trustees because they are subject to an incurable conflict of interest (Am.Compl. Claim 8). The Trustee defendants contend that the plaintiffs' claims should be dismissed because the court could grant no relief for them under any set of facts that could be proved consistent with the allegations in the amended complaint. The court will address each claim in turn.

### 1. Claims 1, 2 and 3: ERISA Section 404(a)(1) and the Use of Non–Uniform Contribution Rates

The plaintiffs assert that the Trustee defendants breached their fiduciary duty under ERISA section 404(a)(1) by setting non-uniform contribution rates for Pension Fund contributions by the plaintiffs' former employers. (Am.Compl. Claims 1, 2 and 3.) The Trustee defendants contend that the plaintiffs' ERISA section 404(a)(1) claims fail because: (1) the Trustee defendants are subject to the fiduciary standards of ERISA only, (2) under ERISA, trustees of a multi-employer pension plan do not engage in a fiduciary function in designing or amending a pension plan, and

(3) establishing contribution rates is inherently a pension plan *design,* not fiduciary, function. (TDs' Mot. to Dismiss at 2, 10.) The plaintiffs dispute each of these contentions. (Opp'n to TDs' Mot. to Dismiss at 6.)

## (a) ERISA Defines the Trustee Defendants' Fiduciary Responsibility

In determining whether the Trustee defendants breached a fiduciary duty to the plaintiffs, the plaintiffs urge this court to consider not only ERISA, but also the Taft–Hartley Act, 29 U.S.C. § 141 *et seq.,* and the common law of trusts. (*See* Pls.' Opp'n at 8–9, 20–23, 26, 37–38.) For the reasons that follow, the court concludes that only ERISA, and not the common law of trusts nor the Taft–Hartley Act, defines the Trustee defendants' fiduciary duties in this matter. The plaintiffs claim that the Trustee defendants breached their fiduciary duties to the plaintiffs under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). (Pls.' Opp'n at 23–26.) ERISA section 404(a)(1), which sets forth a fiduciary's duties, provides in relevant part:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.] ****

29 U.S.C. § 1104(a)(1). The plaintiffs argue that the Trustee defendants failed to "discharge [their] duties with respect to the plan solely in the interest of the participants and beneficiaries...." *See* ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). However, this section by its terms applies to a person only to the extent that (1) the person is a fiduciary, and (2) the person is discharging his or her duties with respect to a plan. Thus, the court first must determine whether the Trustee defendants are fiduciaries and whether they were discharging "duties with respect to a plan." ERISA section 3(21)(A) states:

[A] person is a fiduciary with respect to a plan to the extent

(i) he exercises any ·discretionary authority or discretionary control respecting management of such plan or ·exercises any authority or control respecting management or disposition of its assets,

(ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or

(iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. ****

29 U.S.C. § 1002(21)(A). The Supreme Court has interpreted this provision to mean that a person is a fiduciary with respect to a plan and, therefore, is subject to ERISA fiduciary duties to the extent that the person "exercises any discretionary authority or discretionary control respecting *management*" of the plan, or "has any discretionary authority or discretionary responsibility in the *administration*" of the plan. *See Varity Corp. v. Howe,* 516 U.S. 489, 498, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (emphasis added) (citing 29 U.S.C. § 1002(21)(A)(i) and (iii)).

The Court thus indicated that plan management and administration are the hallmarks of fiduciary status. *See id.* The D.C. Circuit has further held that a party "is subject to ERISA's fiduciary standards only when it acts in a fiduciary capacity." *See Systems Council EM-3 v. AT & T Corp.,* 159 F.3d 1376, 1379 (D.C.Cir.1998), *aff'g* 972 F.Supp. 21 (D.D.C.1997). Thus, the Trustee defendants contend that they were not acting in a fiduciary capacity and thus were not discharging their duties as fiduciaries when they established the contribution rate and benefit structure. (TDs' Mot. to Dismiss at 12.)

The plaintiffs respond that the Trustee defendants' fiduciary responsibilities are defined not solely by ERISA section 404(a), but also by the duties found under the common law of trusts. (Opp'n to TDs' Mot. to Dismiss at 8, 24–25) (citing *Central States, S.E. and S.W. Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 570 & n. 10, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985)). The plaintiffs contend that adopting contribution rates is a fiduciary act under the common law of trusts. Moreover, the plaintiffs argue that ERISA should not be read to provide pension plan participants with less protection than they enjoyed before ERISA's enactment. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 114, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Thus, according to the plaintiffs, the Trustee defendants' adoption of contribution rates should be reviewable as a fiduciary act and, under the common law of trusts, a fiduciary must treat similarly situated beneficiaries similarly. (Opp'n to TDs' Mot. to Dismiss at 25.) Accordingly, the plaintiffs contend, the Trustee defendants should be held liable because they established a contribution system whereby "similarly situated employees of Related Employers have been treated differently for no reason other than an arbitrary one—that they started their careers in different geographic areas." (Opp'n to TDs' Mot. to Dismiss at 25–26.)

■ The court disagrees that either the common law of trusts or the Taft–Hartley Act determines the Trustee defendants' fiduciary duties in this action. As a preliminary matter, the court notes that the plaintiffs did not allege any violations of or seek relief under the Taft–Hartley Act. More importantly, however, the court concludes that prior case law applying the common law of trusts and the Taft–Hartley Act no longer controls in ERISA fiduciary duty cases such as the instant matter. *See Local 144 Nursing Home Pension Fund v. Demisay,* 508 U.S. 581, 595, 113 S.Ct. 2252, 124 L.Ed.2d 522 (1993) (Stevens, J., concurring) (noting that *Local 144* "overrule[s] decades of case law"). The Court in *Local 144* cited ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1), as setting forth the duties of a fiduciary under ERISA, and indicated that the remedies for breach of such duties were to be found under ERISA. *See id.* at 592 & n. 6, 113 S.Ct. 2252.

[3] Moreover, the Supreme Court has held that ERISA constitutes a comprehensive statutory scheme that preempts the common law of trusts where the two bodies of law conflict. *See, e.g., Mertens v. Hewitt Associates,* 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (ERISA is "enormously complex and detailed"); *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 361, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980) (ERISA is a "comprehensive and reticulated statute"). Although trust law may offer a "starting point" for analysis in some situations, it must give way if it is inconsistent with "the language of the statute, its structure, or its purposes." *See Varity Corp. v. Howe,* 516 U.S. 489, 497, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); *see also Hughes Aircraft Co. v.*

*Jacobson,* 525 U.S. 432, 447, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999).

The D.C. Circuit has addressed the precise question of whether the common law of trusts or ERISA governs in determining whether a party acts as a fiduciary. *See Systems Council EM–3 v. AT & T Corp.,* 159 F.3d 1376, 1379 (D.C.Cir.1998). In *Systems Council,* the D.C. Circuit stated that "although appellants urge us to consider the extensive common law of trusts in determining whether AT & T acted as a settlor or as a fiduciary when it amended its pension plans, the [Supreme] Court's interpretation of [ERISA] § 3(21)(A) is dispositive." *Id.*

Thus, this court declines to reach into the common law of trusts or the Taft–Hartley Act, but rather will look only to ERISA sections 3(21)(A) and 401–404 to determine whether the Trustee defendants acted as fiduciaries so as to subject their actions to review under the fiduciary standards of ERISA section 404(a)(1). As stated earlier, the Trustee defendants will be subject to the fiduciary standards only if they acted in a fiduciary capacity when they established the pension contribution rates and benefit system.

#### (b) Designing or Amending a Plan Is Not a Fiduciary Function

The Trustee defendants contend that the trustees of a multi-employer pension plan do not engage in a fiduciary function when they design or amend a pension plan. (TDs' Mot. to Dismiss at 13.) The Supreme Court in *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995) held that under ERISA a welfare plan sponsor is free, "for any reason at any time, to adopt, modify, or terminate welfare plans" and does not act in a fiduciary capacity when it does so. *Id.* at 77–79, 115 S.Ct. 1223; *see also Systems Council EM–3 v. AT & T,*

972 F.Supp. 21, 30–31 (D.D.C.1997), *aff'd* 159 F.3d 1376 (D.C.Cir.1998).

The Supreme Court, in *Lockheed Corp. v. Spink,* 517 U.S. 882, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996), subsequently expanded the rule of *Curtiss–Wright* from welfare plans to pension plans. In *Lockheed,* the Supreme Court dismissed a group of employees' breach-of-fiduciary-duty claims, holding that "the act of amending a pension plan does not trigger ERISA's fiduciary provisions." *See id.* at 891, 116 S.Ct. 1783. Next, in *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999), the Court clarified that its holding in *Lockheed* does not turn on "the type of plan being amended for the simple reason that the plain language of the statute defining fiduciary makes no distinction." *Id.* at 443, 119 S.Ct. 755. Thus, under this line of cases, a plan sponsor does not act in a fiduciary capacity when it adopts, modifies, or terminates a pension plan.

The plaintiffs, however, contend that the design or amendment of *multi-employer* pension plans *are* fiduciary acts. (Opp'n to TDs' Mot. to Dismiss at 26.) The plaintiffs argue that *Curtiss–Wright, Lockheed,* and *Hughes* are inapplicable because the Supreme Court never intended those cases to refer to multi-employer pension plans. (*Id.*) As a preliminary matter, the plaintiffs cite several pre-*Lockheed* Second Circuit authorities applying ERISA's fiduciary duty standards to plan amendments. (Opp'n to TDs' Mot. to Dismiss at 28, 31.) *See Siskind v. Sperry Retirement Program,* 47 F.3d 498, 505–506 (2d Cir.1995) ("courts have treated [multi-employer] plan amendments as fiduciary functions, invalidating amendments not made in furtherance of the participants' and beneficiaries' interest."); *Chambless v. Masters, Mates & Pilots Pension Plan,* 772 F.2d 1032, 1040 (2d Cir.), *cert. den.,* 475 U.S.

1012, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1985) (plan amendment nullified because it was not "solely in the interests of the participants and the beneficiaries" under ERISA § 404(a)(1)). This court, however, declines to follow those authorities precisely *because* they pre-date the Supreme Court's more recent decisions in *Lockheed* and *Hughes*. *See Lockheed*, 517 U.S. at 890–91, 116 S.Ct. 1783; *Hughes Aircraft*, 525 U.S. at 443, 119 S.Ct. 755.

Next, the plaintiffs argue that *Lockheed* does not apply to multi-employer pension plans. The plaintiffs contend that the *Lockheed* Court meant to refer only to employers, not to a board of trustees. They point out that the Court's exact words were that "when *employers* undertake [to adopt, modify, or terminate pension plans,] they do not act as fiduciaries." *Lockheed*, 517 U.S. at 891, 116 S.Ct. 1783 (emphasis added); (Opp'n to TDs' Mot. to Dismiss at 29.) The plaintiffs argue that despite the Supreme Court's use of the term of "plan sponsor" in other parts of the opinion, the Court actually focused on employers throughout its analysis. (Opp'n to TDs' Mot. to Dismiss at 29.) Moreover, the plaintiffs contend that the Court used the term "plan sponsors" in its generic sense rather than its technical sense under ERISA. (Opp'n to TDs' Mot. to Dismiss at 30.)

■ This court disagrees with the plaintiffs and concludes that the term "plan sponsor," as used in *Curtiss–Wright, Lockheed* and *Hughes*, applies to the trustees of a multi-employer pension plan, such as the Trustee defendants here. ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B), defines "plan sponsor" as follows:

> The term "plan sponsor" means (i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan estab-

lished or maintained by an employee organization, or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, *joint board of trustees*, or other similar group of representatives of the parties who establish or maintain the plan.

29 U.S.C. § 1002(16)(B) (emphasis added). The express language of ERISA section 3(16)(B)(iii), thus, would include trustees of multi-employer pension plans within the definition of "plan sponsor." Moreover, the definition in ERISA section 3(16)(B)(iii) is the statute's sole definition of the term "plan sponsor," appearing in ERISA's definitional section and indicating that the definition governs throughout the statute and for all types of plans, including multi-employer pension plans such as the plan at issue here. *See* 29 U.S.C. § 1002 (stating that definitions are "for purposes of this subchapter," i.e., ERISA). Despite the plaintiffs' contention that the Court used the term "plan sponsor" in a generic sense in *Lockheed* and *Hughes*, this court notes that Congress has given that term a specified and technical meaning in the context of ERISA plans. Moreover, this court must assume the Supreme Court was familiar with that meaning. *See, e.g., Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (Court follows ordinary usage of terms, unless Congress gives them a specified or technical meaning); *see also* William N. Eskridge, Jr. & Philip P. Frickey, *The Supreme Court 1993 Term: Foreword*, 108 Harv.L.Rev. 26, 97 (1994). Accordingly, this court concludes that the holdings in *Curtiss–Wright, Lockheed*, and *Hughes* are best read to support the proposition that trustees, such as the Trustee defendants here, do not engage in a fidu-

ciary function when they design or amend a pension plan, whether or not it is a multi-employer plan.

In the wake of *Curtiss–Wright, Lockheed* and *Hughes,* subsequent appellate decisions have followed the view that modifying or amending (as opposed to administering) an ERISA plan are not fiduciary acts. *See, e.g., Voyk v. Brotherhood of Locomotive Engineers,* 198 F.3d 599, 605 (6th Cir.1999) (amendments to multi-employer health and welfare plan are not fiduciary acts); *Walling v. Brady,* 125 F.3d 114, 117–18 (3d Cir.1997) (amendment to multi-employer pension plan authorizing payment of additional $100 per month to 85% of fund participants, rather than all participants, was not a fiduciary act); *Pope v. Central States S.E. and S.W. Health and Welfare Fund,* 27 F.3d 211, 212–13 (6th Cir.1994) (amendment to multi-employer welfare plan is not subject to ERISA's fiduciary-duty provision).

In further support for the proposition that establishing the contribution rate system did not constitute managing or administering the investment or use of trust assets, this court finds instructive the distinction between "settlor functions" and "fiduciary functions." *See Lockheed,* 517 U.S. at 890–91, 116 S.Ct. 1783. In *Lockheed,* the Court explained that creating, altering or terminating a trust are deemed "settlor functions," while managing or administering the investment and use of the trust assets are deemed "fiduciary functions." *See id.* While the settlor-fiduciary distinction already had been applied in the context of welfare plans, *see Curtiss–Wright,* 514 U.S. at 77–79, 115 S.Ct. 1223, *Lockheed* expressly extended the principle to pension plans. *See Lockheed,* 517 U.S. at 891, 116 S.Ct. 1783 ("[W]e think that the rules regarding fiduciary capacity—including the settlor-fiduciary distinction—should apply to pension and welfare plans

alike"); *see also Systems Council EM–3 v. AT & T,* 972 F.Supp. 21 (D.D.C.1997).

The D.C. Circuit has stated that changing the design of a trust does not involve the kind of discretionary administration that typically triggers fiduciary responsibilities. *See Systems Council EM–3 v. AT & T Corp.,* 159 F.3d 1376, 1379 (D.C.Cir. 1998). This rule, according to the Court, "is rooted in the text of [ERISA section 3(21)(A) ]." *See Systems Council,* 159 F.3d at 1379 (quoting *Lockheed,* 517 U.S. at 890, 116 S.Ct. 1783).

Thus, this court agrees with the Trustee defendants that the reference to plan sponsors in *Curtiss–Wright, Lockheed,* and *Hughes* should be read as applying those holdings to boards of trustees of multi-employer plans. In addition, this court holds that the board of trustees of a multiemployer plan, such as the Trustee defendants here, do not act in a fiduciary capacity when they amend or modify a pension plan.

### (c) Setting Contribution Rate and Benefit Structure is Plan Design Function Exempt from ERISA Fiduciary Duty Provisions

The Trustee defendants contend that setting a contribution rate structure is necessarily a plan design function because it directly determines pension benefit levels. (TDs' Mot. to Dismiss at 21.) The Trustee defendants argue that establishing the contribution rate constitutes a plan amendment or design, amounting to a settlor function not subject to ERISA's fiduciary standards. (*Id.*) The Trustee defendants argue that the plaintiffs' principal dispute concerns the level of *benefits* generated by the *contribution rates,* not the contribution rates as such. (Reply to TDs' Mot. to Dismiss at 17.)

As discussed above, the definition of a fiduciary may hinge on the distinction be-

tween settlor and fiduciary functions. The Trustee defendants argue that the power to name beneficiaries and define benefits and liabilities of a trust is a settlor, not a fiduciary, power. The Trustee defendants cite *Alessi v. Raybestos–Manhattan Inc.*, 451 U.S. 504, 511, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), where the Court commented that it "is clear from the statutory language" of ERISA that "private parties, not the Government, control the level of benefits." (TDs' Mot. to Dismiss at 21–2.) The court notes that numerous other authorities stand for the principle that ERISA does not confer substantive rights on employees, but rather ensures that they will receive those benefits that the employers have guaranteed to them. *See, e.g., Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984) (citing *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 375, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980)); *Connors v. Incoal Inc.*, 995 F.2d 245, 248 (D.C.Cir.1993); *accord Bennett v. Conrail Matched Savings Plan Administrative Committee*, 168 F.3d 671, 677 (3d Cir.1999). Accordingly, plan amendments affecting benefit levels have been held not to be fiduciary functions that run afoul of ERISA's restrictions and guarantees. *See Jos. Schlitz Brewing Co. v. Milwaukee Brewery Workers' Pension Plan*, 3 F.3d 994, 1001–1002 (7th Cir.1993).

[5] The D.C. Circuit in *Systems Council* explained that, under ERISA, AT & T, an employer and plan administrator, was subject to ERISA's fiduciary standards only when it acts in a fiduciary capacity. *See Systems Council*, 159 F.3d at 1379. Specifically, the court held that a group of current and retired employees and their union failed to state a claim under ERISA's fiduciary provisions, because they failed to show that AT & T acted in a fiduciary capacity when it amended its pension and welfare plans and allocated the assets and liabilities of those plans between AT & T and a new company created by AT & T. *See id.* Those actions failed to constitute fiduciary functions because, as the D.C. Circuit explained, amending or modifying any type of employee benefit plan, including pension plans, are settlor and not fiduciary functions. *Id.* In other words, changing the design of a plan does not involve the kind of discretionary administration that typically triggers fiduciary responsibilities. *Id.*

The D.C. Circuit in *Systems Council* thus relied in part on the settlor-fiduciary distinction discussed in *Lockheed*. *See Systems Council*, 159 F.3d at 1379–80. In particular, the D.C. Circuit noted that actions "creating, altering or terminating a trust" are deemed settlor functions, and actions "managing and administering the investment and use of the trust assets" are deemed fiduciary functions. *Id.* This court in *Fitts v. Federal Nat. Mortg. Ass'n*, 44 F.Supp.2d 317, 325 (D.D.C.1999) (Urbina, J.), echoed the settlor-fiduciary distinction, citing the language of ERISA's fiduciary duty provisions, which state that:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises . . . any authority or control *respecting management or disposition of its assets*, . . . or (iii) he has any discretionary authority or discretionary responsibility *in the administration of such plan*.

*See* 29 U.S.C. § 1002(21)(A) (emphasis added).

The plaintiffs dispute that setting contribution rates is a plan design function. (Opp'n to TDs' Mot. to Dismiss at 9–10.) The plaintiffs argue that because the plan document "never contained, nor was required to contain, a provision requiring employers to pay contributions at a specific rate," the adoption of the contribution

rates was not a plan design, but rather a matter of plan administration within the discretion of the Trustee defendants. (*Id.* at 13.) The plaintiffs note that the pension plan document contains a benefit formula, not a contribution formula, and that the 1993 Participation Agreement provides that "the Employer shall make contributions at such rates as are established by the Trustees of the Funds." (*Id.* at 10–11.) The minutes of a Board of Trustees meeting reflect that the Board adopted the "home local rate." (*Id.* at 12.) The plaintiffs argue that neither the minutes of the Board of Trustees meeting, nor a resolution by the Trustee defendants, constitutes a plan amendment. (*Id.* at 13–14.) Thus, according to the plaintiffs, because the Trustee defendants had the power to amend the Plan but did not use that power, adopting the contribution rates cannot be considered a Plan amendment. (*Id.* at 14.)

■ Whether a party acts as a fiduciary under ERISA is determined by reference to the nature of the particular activity at issue. *See Systems Council,* 972 F.Supp. at 30, *aff'd,* 159 F.3d 1376 (D.C.Cir.1998); *Arakelian v. National W. Life Ins. Co.,* 748 F.Supp. 17, 22 (D.D.C.1990); *accord Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 61 (4th Cir.1992), *cert. den.,* 506 U.S. 1081, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993); *Maniace v. Commerce Bank,* 40 F.3d 264, 267 (8th Cir.1994), *cert. den.,* 514 U.S. 1111, 115 S.Ct. 1964, 131 L.Ed.2d 854 (1995). Moreover, plan design may be accomplished through a variety of means besides the formal adoption of a plan or an amendment to an existing plan. *See Horn v. Berdon, Inc. Defined Benefit Pension Plan,* 938 F.2d 125, 127 (9th Cir.1991). Thus, the court may treat the Trustee defendants' adoption or modification of plan contribution rates as plan design functions even though the Trustee defen-

dants did not formally amend the plan. For example, in *Horn,* an employer was permitted to terminate a plan through a board of directors resolution and did not need to call or treat the document as an amendment to the plan. *See id.* at 127. Thus, the plan amendments or modifications here need not have been implemented by formal amendment. Accordingly, this court holds that the nature of the Trustee defendants' action rather than its form will control whether the action is deemed a fiduciary function.

In further support of the plaintiffs' view that the Trustee defendants' actions were not plan design changes, the plaintiffs contend that the Trustee defendants set the contribution rates unilaterally. (Pls.' Opp'n at 12–13.) The Trustee defendants dispute the plaintiffs' contention. (TDs' Reply at 18.) However, for purposes of this motion to dismiss, the court will take the plaintiffs' allegations as true. *See, e.g., Metropolitan Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noise,* 501 U.S. 252, 264, 111 S.Ct. 2298, 115 L.Ed.2d 236 (1991); *Talenti v. Clinton,* 102 F.3d 573, 574 (D.C.Cir.1996). Nevertheless, the court concludes that this issue does not bear on whether the Trustee defendants acted in a fiduciary capacity. As noted above, the question of whether a party acts as a fiduciary is to be determined with respect to the nature of each particular activity at issue. *See Systems Council,* 972 F.Supp. at 30. Here, the particular activity in question is the Trustee defendants' setting of contribution rates.

The court now turns to the question of whether the Trustee defendants' setting of contribution rates is a fiduciary function. The plaintiffs cite *Abbott v. Pipefitters Local Union No. 522 Hospital, Medical, and Life Benefit Plan,* 94 F.3d 236 (6th Cir. 1996), for the proposition that a decision to

change contribution rates is an administrative decision, rather than a plan modification or amendment. (Opp'n to TDs' Mot. to Dismiss at 15.) The *Abbott* court stated that "the Trustees, in making this decision, did not act in a manner analogous to settlors of a trust, but rather as administrators exercising the discretionary authority granted to them under the plan." (Opp'n to TDs' Mot. to Dismiss at 16.)

This court finds the plaintiffs' citations to *Abbott* unavailing. First, this court notes that *Abbott* held that the contribution rate change was subject to review under ERISA's fiduciary duty provisions because the court found the decision to be administrative, rather than one that "modified" or "amended" the plan. In other words, the trustees, in making this decision, did not act in a manner analogous to settlors of a trust, but rather as administrators exercising the discretionary authority granted to them under the plan. *See Abbott,* 94 F.3d at 240.

The court concludes *Abbott* is distinguishable from the instant case because *Abbott* involved changes to contribution rates in accordance with specified actuarial tables to correct a benefits disparity discovered during a plan investigation. *Id.* at 237. Thus, the changes in *Abbott* indeed were administrative tasks that involved the application of plan documents and the exercise of powers by plan administrators. *Id.* Moreover, the changes to the plan in *Abbott* did not amount to changes in the *design* or structure of the plan.

Under the instant plan, employees receive benefits in direct proportion to the contribution amount. Thus, the trustees would not have to change the contribution rate for administrative reasons. Rather the types of changes adopted by the trustees here reflected a change in the design of the plan. Importantly, the court notes that the plaintiffs seek, *inter alia,* the reformation of the Plan. (Opp'n to TDs' Mot. to Dismiss at 38.) By seeking reformation as a remedy, the plaintiffs in effect acknowledge that the contribution rates are a plan design function. If the only acceptable relief is a reformation of the plan's design, then logic suggests that the alleged fault must have been with the underlying plan design. Accordingly, the court concludes that the establishment of the contribution rates was a part of plan design.

This court holds that setting the contribution rate was a settlor, not fiduciary, function because it was a matter of plan design. The court also concludes that the Trustee defendants were not fiduciaries under ERISA section 3(21)(A) and thus they were not subject to review under the fiduciary standards of ERISA section 404(a)(1). Accordingly, no relief can be granted on plaintiffs' first, second, and third claims under any set of facts that could be proved consistent with the allegations. Accordingly, this court will dismiss the plaintiffs' first, second, and third claims pursuant to Rule 12(b)(6).

**2. Claims 5, 7 and 8: ERISA Section 404(a)(1) Breach of Fiduciary Duty Claims for Failing To Collect Distributions from SMWIA and Conflict of Interest**

The plaintiffs assert that the Trustee defendants breached their fiduciary duty under ERISA section 404(a)(1) by failing to collect distributions from the SMWIA. (Am.Compl. Claims 5, 7.) The plaintiffs also assert that Arthur Moore as well as other members of the Board are in an incurably conflicted position because of their actions in causing the cessation of contributions to the pension fund by the SMWIA or in acquiescing to the cessation of contributions. (Am.Compl. Claim 8.) The Trustee defendants contend that these

claims must fail because they are insufficiently pled and are based on conclusory assertions that lack factual support. (TDs' Mot. to Dismiss at 2–3.)

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The purpose of the minimum pleading standard of Rule 8 is to give the defendants fair notice of the claim being asserted sufficient to prepare a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* applies. *See Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C.1977).

The plaintiffs contend that their fifth, seventh, and eighth claims have fairly put the Trustee defendants on notice of the claims asserted by the plaintiffs and the relief they seek. (Opp'n to TDs' Mot. to Dismiss at 44.) The plaintiffs argue that, with respect to the fifth claim, they have alleged the cessation of contributions by the SMWIA in violation of ERISA and the failure of the Trustee defendants to "pursue these contributions because Defendant Moore, at that time, was both President of the Union and Chairman of the [Pension] Fund." (*Id.* at 42.)

Similarly, with respect to the seventh claim, the plaintiffs have alleged that the SMWIA paid contributions for 1,400 hours of employment per year per employee rather than the actual 2,080 hours for which all other contributing employers pay and that the SMWIA paid contributions in a one-time annual payment rather than monthly as did all other contributing employers mid never paid interest on the delinquent contributions. (Am. Compl.¶¶ 40–41.) The plaintiffs asserted that the Trustee defendants breached their fiduciary duties by not attempting to collect contributions from the SMWIA based on all hours for which its employees were paid and by not attempting to collect interest from the SMWIA for its delinquent contributions or to enforce a monthly payment schedule. (Am.Compl. ¶ 42, Claim 7.)

■ Under ERISA, trustees have a fiduciary duty to "act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries." *See Central States S.E. & S.W. Areas Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 571–72, 105 S.Ct. 2833, 86 L.Ed.2d 447, *reh'g den.*, 473 U.S. 926, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 874 F.2d 912, 916 (2d Cir.1989). In performing this duty, trustees have a range of options—including suing the delinquent employer, randomly auditing the employer's records, threatening work stoppages, picketing the employer, or similar actions—depending upon the circumstances. There is no duty to take any particular course of action if another approach seems preferable. *See Alfarone v. Bernie Wolff Constr. Corp.*, 788 F.2d 76, 79–80 (2d Cir.1986) (employee benefit fund trustees' refusal to file suit to recover contributions allegedly due from employers was not breach of fiduciary duty). Rather, the trustees' duty is to act with "care, skill, prudence, and diligence" in attempting to recover delinquent contributions or in declining to take a particular course of action to recover those contributions. *See* 29 U.S.C. § 1104(a)(1)(B); *Diduck*, 874 F.2d at 916.

Moreover, plan administrators have been held to have substantial discretion in determining an appropriate course of action against a plan sponsor. *See Herman v. Mercantile Bank, N.A.*, 137 F.3d 584 (8th Cir.1998). In *Mercantile Bank*, the court held that to establish a breach of duty by a health plan's fiduciary for failing

18

to pursue a lawsuit against the plan sponsor, the plaintiff must show that the suit would be successful and that the health plan and its beneficiaries would benefit. *See id.* at 586. The court pointed out that even if the fiduciary won judgment in a lawsuit against the employer but remained unable to collect on that judgment, the lawsuit would waste the resources of both the plan and the employer. *See id.* at 587. Similarly, allegations that an employer-appointed plan trustee refused to file suit to recover contributions allegedly due fails to make out a breach of fiduciary duty by the trustees under ERISA. *See Alfarone,* 788 F.2d at 80.

Accordingly, the plaintiffs must do more than allege that pension contributions were due and owing, and that the Trustee defendants failed to file suit against the delinquent contributors. Rather the plaintiffs must allege that the Trustee defendants failed to act with the requisite care, skill, prudence, or diligence. The plaintiffs contend that they are not in the position to audit the fund or participate in meetings of the trustees and, thus, cannot know without discovery the trustees' motives in not attempting to collect contributions. (Opp'n to TDs' Mot. to Dismiss at 41.) The court, however, concludes that the plaintiffs simply need to allege facts indicating that the Trustee defendants failed to act with the required care, skill, prudence or diligence.

With respect to their eighth claim, the plaintiffs similarly argue that they have alleged the necessary facts to put the Trustee defendants on notice. The plaintiffs alleged that "Arthur Moore as well as the other current members of the Board are in an incurably conflicted position because of their actions in causing the cessation of contributions to the Pension Fund by the SMWIA and/or in acquiescing to that cessation of contributions." (Am.

Compl. ¶ 43; Claim 8.) The plaintiffs seek to remove the Trustees because of their conflicts. (Am.Compl., Prayer for Relief ¶ 13.) This court concludes, however, that the plaintiffs have failed to state a claim upon which relief may be granted. ERISA places a number of detailed duties and responsibilities on fiduciaries, including the avoidance of conflicts of interest. *See Mertens v. Hewitt Assoc.,* 508 U.S. 248, 252–253, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); *Fitts v. Federal Nat. Mortg. Assn.,* 44 F.Supp.2d 317, 326 (D.D.C.1999). However, the court finds here that the plaintiffs have failed to allege specifically how the Trustees are in an incurably conflicted position. In fact, this court notes that no union trustee could avoid the conflict over setting contribution rates because, as union employees, union trustees will receive benefits from the Pension Fund. Thus, the plaintiffs would be unable to identify any union employee who would not be in a similarly conflicted position.

Because this court finds that the fifth, seventh, and eighth claims are insufficiently pled, this court will grant the Trustee defendants' motion to dismiss those claims without prejudice. The court will grant the plaintiff leave to amend their fifth, seventh, and eighth claims. The plaintiffs will have 30 days from the issuance of this Memorandum Opinion to file an amended complaint with respect to those claims.

## B. The SMWIA defendants' Motion to Dismiss

As discussed above, the plaintiffs assert the following claims against the SMWIA defendants: (1) a claim of discrimination in violation of ERISA section 510 and (2) a claim for unpaid contributions under ERISA section 502(a)(3). (Am.Compl. Claims 4 and 6, respectively.) The SMWIA defendants contend that the plaintiffs' claims should be dismissed because

the court could grant no relief under any set of facts that could be proved consistent with the allegations in the amended complaint. (SDs' Mot. to Dismiss at 1.) This court will address each claim in turn.

### 1. Claim 4: Discrimination in Violation of ERISA Section 510

The plaintiffs assert that the SMWIA defendants discriminated against them in violation of ERISA section 510 when they decided to have the SMWIA cease contributing to the Pension Fund for its employees. (Am.Compl. Claim 4.) The SMWIA defendants respond that the plaintiffs' section 510 claim must fail because the plaintiffs fail to allege any facts showing that: (1) the SMWIA defendants took any adverse employment action against them, (2) the SMWIA defendants targeted particular individuals for discrimination, and (3) the SMWIA defendants acted with the requisite intent to retaliate. (SDs' Mot. to Dismiss at 2.) As discussed below, the court concludes that the plaintiffs have failed to allege that the SMWIA defendants acted in a discriminatory manner in violation of ERISA section 510. Consequently, the court will dismiss the plaintiffs' fourth claim and will not address the SMWIA defendants' other arguments.

ERISA section 510 states in relevant part:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or *discriminate* against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, [or] this subchapter[.]

29 U.S.C. § 1140 (emphasis added).

The SMWIA defendants contend that the plaintiffs fail to allege any discriminatory actions by the SMWIA defendants sufficient to support a section 510 claim. (SDs' Mot. to Dismiss at 8.) ERISA section 510 does not restrict an employer's right to amend a plan as to all participants, even to eliminate future benefits. Instead, it restricts an employer's ability to curtail the rights of some employees vis-a-vis other employees for a discriminatory purpose. *See Inter–Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Railway Co.,* 520 U.S. 510, 117 S.Ct. 1513, 137 L.Ed.2d 763 (1997) (absent an employer's contractual ceding of its rights, the employer remains free under ERISA, for any reason at any time, to adopt, modify, or terminate its welfare plan) (internal quotations and citations omitted). Here the SMWIA's decision to withdraw from the Pension fund affected all current SMWIA employees equally. The SMWIA defendants thus contend that the withdrawal did not discriminate against any particular group. (SDs' Mot. to Dismiss at 8; SDs' Reply at 4.) Moreover, the SMWIA defendants point out that the plaintiffs fail to identify a particular group against whom the SMWIA defendants discriminated. (SDs' Reply at 4.)

This court agrees that the plaintiffs fail to show discriminatory action. In *Andes v. Ford Motor Co.,* 70 F.3d 1332 (D.C.Cir. 1995), the D.C. Circuit analyzed ERISA section 510 to interpret certain of the prohibited actions specified in the statute. The court concluded that the prohibited actions in ERISA section 510 all typically refer to actions targeted against an individual employee or actions which treat certain individual employees discriminatorily vis-a-vis other employees. *See Andes,* 70 F.3d at 1337–38, 1339. Applying the familiar canon of construction *noscitur a sociis,* the D.C. Circuit construed the term "discharge" in ERISA section 510 not to apply

to "layoffs" or "terminations." *See id.* at 1337–38. The court held that layoffs and terminations were not covered by the statute because those terms lacked the personalized targeting associated with each of the prohibited actions listed in ERISA section 510.

Following the D.C. Circuit's holding in *Andes,* this court similarly concludes that the plaintiffs here have failed to allege that the SMWIA defendants' actions involved the singling out or targeting of a particular person or group. The SMWIA defendants' actions thus resemble the across-the-board actions to which the D.C. Circuit concluded that section 510 does not apply. *See Andes,* 70 F.3d at 1337–38. Because this court concludes that the plaintiffs have failed to allege the requisite discriminatory action, the court holds that no relief can be granted on the plaintiffs' fourth claim under any set of facts that could be proved consistent with the allegations. Accordingly, this court will dismiss the plaintiffs' fourth claim pursuant to Rule 12(b)(6).

### 2. Claim 6: Derivative Claim for Contributions

The plaintiffs assert a claim for contributions owed to the Pension Fund because the SMWIA defendants allegedly: (1) paid contributions for its employees for only 1,400 hours of employment per year per employee rather than the actual 2,080 hours for which all other contributing employers paid, (2) paid contributions only as one-time annual payments rather than monthly as did all other contributing employers and (3) never paid interest on the delinquent contributions. (Am.Compl. Claim 6.) The SMWIA defendants contend that the plaintiffs' claim must be dismissed because ERISA does not give the plaintiffs standing to raise a contribution claim as individuals and because the plaintiffs have not fulfilled the requirements to bring

their contribution claim as a derivative suit on behalf of the Pension Fund. (SDs' Mot. to Dismiss at 2.) The court agrees and grants the SMWIA defendants' motion to dismiss this claim without prejudice.

### (a) Standing

■ Here the plaintiffs assert a claim on behalf of the pension fund for contributions to the fund. The SMWIA defendants contend that, except in a derivative action on behalf of a fund, plan participants generally lack standing to sue an employer to require the employer to make contributions to a pension plan. *See Kenney v. Roland Parson Contracting Corp.,* 790 F.Supp. 12, 16 (D.D.C.), *rev'd o.g.,* 28 F.3d 1254 (D.C.Cir.1994); (SDs' Mot to Dismiss at 10; SDs' Reply at 5.) Thus, the SMWIA defendants argue that the plaintiffs would have standing only if this action is brought as, a derivative action, subject to the demand requirement and other procedures set forth in Federal Rule of Civil Procedure 23.1. (SDs' Mot. to Dismiss at 10; SDs' Reply at 5.) The plaintiffs state that their claim is not derivative and, in any event, is not subject to the demand requirements of Rule 23.1. (Pls.' Opp'n at 13.)

While the plaintiffs state that their claim is not derivative, they cite authority only for the proposition that they are not subject to the demand requirement of Rule 23–1. (Pls.' Opp'n at 13) (citing *Kamen v. Kemper Financial Servs., Inc.,* 500 U.S. 90, 97, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991)). The plaintiffs cite *Kamen* in support of their arguments that Rule 23.1 does not create a demand requirement and that, in derivative suits based on federal law, any demand requirement is governed by the substantive federal statute itself, in this case ERISA. *See Kamen,* 500 U.S. at 95–98, 111 S.Ct. 1711. However, none of these arguments directly addresses wheth-

er the plaintiffs have standing as individuals or rather must bring this claim as a derivative action.

This court concludes that the plaintiffs must bring the instant claim as a derivative action. The plaintiffs' claim here is for unpaid contributions, including for the timely payment of monthly contributions and interest upon late contributions. (Am. Compl. ¶¶ 40–41, Claim 6.) Thus, the instant claim for unpaid contributions is brought for or on behalf of the *plan* because such employer contributions would inure to the benefit of the trust generally rather than an individual beneficiary. *See Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 287 (2d Cir.1992) (citing *Alfarone v. Wolff Constr. Corp.,* 788 F.2d 76, 80 (2d Cir.), *cert. den.,* 479 U.S. 915, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986)). As such, the enforcement of the obligation to make contributions is the function, at least in the first instance, of the Trustees. *Id.* Accordingly, this court agrees with the defendants that the plaintiffs have standing to bring this claim, if at all, only as a derivative suit. *See id.; Thornton v. Evans,* 692 F.2d 1064, 1079–80 (7th Cir.1982); *Kenney,* 790 F.Supp. at 16; *Crawford v. Magee,* 1993 WL 438463, *1 (D.Mass.1993); *Warner v. Armco Inc.,* 1993 WL 771048, *8 (D.Minn.1993) (collecting unpublished cases).

#### (b) Derivative Suit Requirements

The SMWIA defendants contend that the plaintiffs' sixth claim must be dismissed because: (1) the plaintiffs fail to allege that the Trustee defendants breached their fiduciary duty by failing to collect the contributions; (2) the claim is based upon inapplicable provisions of the Trust Agreement and (3) the plaintiffs failed to follow the procedural requirements specified in Rule 23.1 of the Federal Rules of Civil Procedure for derivative claims for

employer contributions owed to the pension fund. (SDs' Mot. to Dismiss at 10–11.) The court concludes that the plaintiffs failed to follow the requirements of Rule 23.1 by failing to either allege their efforts to demand action by the trustees or allege that such demand would have proved futile. Accordingly, the court will grant the motion to dismiss without prejudice with respect to Claim 6. Because the court concludes that the plaintiffs have failed to follow the requirements of Rule 23.1, the court will not address the SMWIA defendants' other arguments in support of their motion to dismiss Claim 6.

 The SMWIA defendants contend that the plaintiffs both failed to fulfill the demand requirements of Rule 23.1 and failed to provide any explanation for their failure to do so. (Reply to SDs' Mot. to Dismiss at 5.) A derivative action permits an individual shareholder to bring, *inter alia,* "suit to enforce a corporate cause of action against officers, directors, and third parties." *See Ross v. Bernhard,* 396 U.S. 531, 534, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of "faithless directors and managers." *See Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 548, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). To prevent the abuse of this remedy, however, equity courts established as a precondition for the suit that the shareholder demonstrate "that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions." *See Kamen,* 500 U.S. at 95–96, 111 S.Ct. 1711 (quoting *Ross,* 396 U.S. at 534, 90 S.Ct. 733). This requirement is accommodated by Federal Rule of Civil Procedure 23.1. Rule 23.1 states in pertinent part:

The complaint [in a derivative action] shall ... allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort. ****

FED.R.CIV.P. 23.1.

The plaintiffs argue that they are not required to fulfill the demand requirement under Rule 23.1. (Opp'n to SDs' Mot. to Dismiss at 13–14.) The plaintiffs argue that according to *Kamen*, a case involving a suit under the Investment Company Act of 1940, 15 U.S.C. § 80a–20(a), a district court must look to the particular federal substantive law to determine whether a demand requirement exists. *See Kamen*, 500 U.S. at 95, 111 S.Ct. 1711. The plaintiffs here are suing Pursuant to ERISA section 502(a)(3) which authorizes actions by participants for equitable relief to redress violations of ERISA or the plan. (Opp'n to SDs' Mot. to Dismiss at 15.) The plaintiffs argue that neither section 502(a)(3) nor any other provision of ERISA imposes a demand requirement. (Opp'n to SDs' Mot. to Dismiss at 15.)

The court, however, looks for guidance to those authorities specifically addressing whether Rule 23.1 applies to derivative claims brought by ERISA plan participants against employers to collect delinquent contributions. *See Diduck*, 974 F.2d at 287; *Kenney*, 790 F.Supp. at 16; *Thornton*, 692 F.2d at 1080; *Crawford*, 1993 WL 438463 at *1; *Warner*, 1993 WL 771048 at *8. Because the plaintiffs' claim for unpaid contributions is on behalf of the plan, and because the Trustees bear the primary responsibility for enforcing obligations under the plan, the court concludes that the plaintiffs' claim may properly be brought only as a derivative action and thus is subject to the requirements of Rule 23.1. *See Diduck*, 974 F.2d at 287; *Thornton*, 692 F.2d at 1080.

The court next turns to whether the plaintiffs may be excused from fulfilling the demand requirement. The purpose of the demand requirement is to "affor[d] the directors an opportunity to exercise their reasonable business judgment and 'waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right.'" *See Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 533, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984) (quoting *Corbus v. Alaska Treadwell Gold Mining Co.*, 187 U.S. 455, 463, 23 S.Ct. 157, 47 L.Ed. 256 (1903)). Ordinarily, it is only when demand is excused that a shareholder enjoys the right to initiate "suit on behalf of his corporation in disregard of the directors' wishes." *See* R. Clark, CORPORATE LAW § 15.2, p. 640 (1986).

The plaintiffs argue that, if a demand requirement exists, it may be dispensed with if compliance would be futile. (Opp'n to SDs' Mot. to Dismiss at 17.) The plaintiffs argue that they have alleged facts showing that a demand on the trustees would have been futile. (Opp'n to SDs' Mot. to Dismiss at 18.) The SMWIA defendants, however, argue that the plaintiffs must plead with particularity the reasons why it would have been futile to demand that the Trustees sue the SMWIA for contributions. *See Gaubert v. Federal Home Loan Bank Bd.*, 863 F.2d 59, 69 (D.C.Cir. 1988). (SDs' Reply at 6.) In *Gaubert*, the D.C. Circuit held that a plaintiff bringing a derivative action and claiming futility as art exception from the demand requirement must plead *with particularity* some reason to infer that the directors (or trustees, in an ERISA case) could not have

acted independently. *See Gaubert,* 863 F.2d at 69.

Federal Rules of Civil Procedure 8(a)(2), 8(e) and 8(f) state that technical forms of pleading are not required, that pleadings ought to be construed liberally so as to do substantial justice and, importantly, that they need to contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." *See, e.g.,* Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1202 (2d ed.1990). Hence, a complaint is not subject to dismissal with prejudice unless it appears with certainty that no relief may be granted under any set of facts that can be proved in support of its allegations. *See Heimann v. National Elevator Industry Pension Fund,* 187 F.3d 493, 509 (5th Cir.1999). Although the plaintiffs' opposition explains why the action would have been futile, they failed to allege futility in the Amended Complaint. (Am.Compl. ¶¶ 40, 41; Claim 6.) Thus, the court may not excuse the plaintiffs' failure to follow the demand requirement. Nevertheless, this court will dismiss the plaintiffs' sixth claim without prejudice and will grant the plaintiff leave to refile the claim within 30 days of the date of this Memorandum Opinion.

### C. Plaintiffs' Request for Leave to File a Second Amended Complaint

■ Although the plaintiffs have not filed a separate motion to amend their amended complaint, the plaintiffs requested leave to amend in their oppositions to the defendants' motions to dismiss. (Opp'n to SDs' Mot. to Dismiss at 20–21; Opp'n to TDs' Mot. to Dismiss at 44.)

■ Because the plaintiffs already have amended their complaint and the defendants have filed their answer, the plaintiffs may further amend only with leave of this court. Under Rule 15 of the Federal Rules of Civil Procedure, "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of the court or by written consent of the adverse party...." Fed.R.Civ.P. 15(a). The court recognizes that leave to amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The decision whether to permit a party to amend a pleading is within the discretion of the court. *See Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C.Cir. 1996). It is, however, an abuse of discretion by the court to deny leave to amend unless there is a sufficiently compelling reason, such as "undue delay, bad faith or dilatory motive ... repeated failure to cure deficiencies by [previous] amendments ... [or] futility of amendment." *Id.* (*quoting Foman,* 371 U.S. at 182, 83 S.Ct. 227).

Because the SMWIA defendants have not opposed the plaintiffs' request to amend, the court grants the plaintiffs leave to amend the plaintiffs' sixth claim and file a second amended complaint with respect to the sixth claim. However, as indicated above, the court concludes that leave to amend with respect to the *fourth* claim would be futile and, accordingly, the court will deny the plaintiffs' motion for leave to amend with respect to their fourth claim.

The Trustee defendants oppose the plaintiffs' request for leave to amend on two grounds. (Reply to TDs' Mot to Dismiss at 24.) First, the Trustee defendants contend that, with respect to the plaintiffs' first three claims, any amendments would be futile because setting contribution rates and corresponding benefit levels is not a fiduciary duty and cannot as a matter of law be the basis for a breach of fiduciary

duty. (Reply to TDs' Mot. to Dismiss at 24.) Second, the Trustee defendants contend that they should not be required to undertake the time and expense of responding to yet another version of the plaintiffs' complaint. *See Gaubert*, 863 F.2d at 59 (affirming denial of leave to amend where second amended complaint would not have been materially different from first amended complaint); (Reply to TDs' Mot. to Dismiss at 24.)

This court finds no evidence in the record of bad faith or dilatory motive on the part of the plaintiffs. Yet, as indicated above, this court concludes that the proposed amendments to the first, second, and third claims in the amended complaint would be futile. Accordingly, this court grants the plaintiffs' request for leave to amend with respect to the amended complaint's fifth, seventh and eighth claims, and denies the plaintiffs' request for leave to amend with respect to the amended complaint's first, second and third claims.

### D. Plaintiffs' Request to Stay Consideration of the Pending Motions and Order a Settlement Conference

While the pending motions to dismiss were *sub judice*, the plaintiffs moved to stay consideration of the motions and to refer this matter to a magistrate judge for a settlement conference. Both defendants object to the plaintiffs' motion and contended that substantial resources already have been invested in briefing the Pending motions in two different federal courts. Moreover, the defendants noted that, because the motions already have been briefed, a referral to a magistrate judge at the present stage would not save additional attorney's fees and thus the avoidance of additional attorney's fees would not promote settlement in this instance. Upon consideration of the Plaintiffs' motion, the defendants' oppositions and the plaintiffs' reply, this court concludes that staying the pending motions and referring this matter to a magistrate judge would not be appropriate. Accordingly, the court will deny the plaintiffs' motion to refer this matter to a magistrate judge and to stay consideration of the pending motions during a settlement conference.

### V. CONCLUSION

For the foregoing reasons, this court grants the Trustee defendants' motion to dismiss with prejudice with respect to claims 1, 2 and 3 and *without* prejudice with respect to claims 5, 7 and 18. The court further grants the SMWIA defendants' motion to dismiss with prejudice with respect to claim 4 and *without* prejudice with respect to claim 6. The court also grants in part and denies in part the plaintiffs' motion for leave to file a second amended complaint and, specifically, grants the motion for leave to file a second amended complaint with respect to claims 5, 6, 7 and 8, and denies the plaintiffs' motion for leave to file a second amended complaint with respect to claims 1, 2, 3 and 4. The court further denies the plaintiffs' motion to refer the case to a magistrate judge for settlement discussions and to stay consideration of the pending motions To dismiss during such discussions.