United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-2197

_____

|  |  |  |
|---|---|---|
| Alexis M. Herman, Secretary of the United States Department of Labor, | * * * | |
| Appellee, | * * | |
| v. | * * | |
| Mercantile Bank, N.A.; | * * | |
| Defendant, | * * | |
| Timothy J. Schwent; | * | Appeal from the United States |
| | * | District Court for the Eastern |
| Appellant. | * | District of Missouri. |
| | * | |
| Lenco, Inc., Employees Stock Ownership Plan & Trust; | * * * | |
| Defendant, | * * | |
| The Plan of Medical Care Benefits of Lenco, Inc., | * * * * | |
| Defendants. | * | |

_____

Submitted: January 12, 1998
Filed: February 25, 1998

_____

Before BOWMAN and BRIGHT, Circuit Judges, and JONES[1], District Judge.
_____

BRIGHT, Circuit Judge.

The Secretary of the United States Department of Labor ("Secretary") filed suit against Timothy J. Schwent and several other officers of Lenco, Inc. ("Lenco"), a bankrupt company, because Lenco failed to pay certain health care claims. At the time in question, Schwent served as the administrator for Lenco's health plan. The district court ruled in favor of the Secretary, entering judgment against Schwent in the amount of $137,770.41 and granting the Secretary part of the injunctive relief requested. On appeal, Schwent argues that the district court erred in (1) determining that he breached his fiduciary duty to the health plan under ERISA;[2] (2) finding him personally liable for a "loss to the plan;" and (3) taking judicial notice of another portion of this case. We reverse and conclude that the district court erred in determining the underlying facts relating to the conclusion that Schwent breached his fiduciary duty.

## I. BACKGROUND

Lenco sponsored a health plan for its employees from 1952 until March 1, 1988. Lenco self-insured its employees from 1983 until March 1, 1988. General American Life Insurance Company provided administrative services and "stop-loss" coverage for yearly claims of any particular claimant exceeding $35,000 in the aggregate. From mid-1986 to September 14, 1989, Schwent, a vice president of Lenco, served as the designated health plan administrator and trustee for Lenco's health plan.

---

[1]The Honorable John B. Jones, United States Senior District Judge for the District of South Dakota, sitting by designation.

[2]The Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461.

Paul Leonard, one of Lenco's founders, owned and operated Lenco until his death on April 16, 1983. In 1983, Lenco's Board of Directors decided to sell Lenco, with the asking price of $10 million. On April 5, 1984, Jerry Ford acquired the controlling stock in Lenco through a highly leveraged buy-out which left the company in a difficult financial position. The buy-out caused Lenco's liabilities to increase from less than $2 million to over $6 million. As part of the buy-out, Ford obtained an asset-based line of credit eventually bought and serviced by Marine Midland Bank ("Midland"). Under the terms of the Midland loan, Midland required Lenco to have all cash coming in to Lenco first available to Midland through what amounted to a "lock-box" arrangement. Therefore, Lenco could only utilize funds for operating expenses including the health care plan after the funds passed through the Midland procedure.[3]

Ford occasionally made the business decision that Lenco would pay certain operating expenses before paying health plan claims. Therefore, the health care trust account at times did not cover the amount due for medical claims.

Lenco employees received health care coverage at no charge. Employees, through a payroll deduction, could also receive subsidized dependant coverage. Employee payroll deductions totaled $66,775.22 for the 1986-88 plan years. Stop-loss payments and money from employee contributions obviously did not cover the entire expense of the health plan. During the period at issue, Lenco deposited a total of $979,061 into the health plan. Lenco designed the health plan to operate at a loss, providing it as a heavily subsidized benefit to Lenco's employees.

Ford informed Schwent of his business decisions to pay other operating costs before fully funding the health plan. Schwent did not bring a lawsuit or other legal

---

[3]According to the joint stipulation of facts filed, Lenco deposited as part of the Midland procedure at least one stop-loss check from General American to Lenco to pay for health care claims.

claim on behalf of the health plan to recover unpaid claims. Instead, Schwent testified that he pressured Ford at least twice per week to pay the medical claims. Ford testified that Schwent talked to him daily about making money available to pay health care claims.

When Lenco filed bankruptcy, $143,166.00 in health plan claims remained unpaid. Lenco's bankruptcy estate satisfied $5,395.59 of this amount leaving $137,770.41 in unpaid medical claims.

The Secretary released Ford and Scott Goodson, vice president of financing of Lenco, from suit when they agreed to consent judgments which required no monetary payment from them for the alleged health plan losses. On February 28, 1997, the district court entered judgment against Schwent for $137,770.41 and entered a portion of the injunctive relief requested by the Secretary.

## II. DISCUSSION

The district court's determination that a breach of fiduciary duty occurred represents a legal ruling reviewed de novo. Barker v. American Mobil Power Corp., 64 F.3d 1397, 1402 (9th Cir. 1995). Here, the district court found that the failure of Schwent to sue his employer resolved the legal issue of a breach of a fiduciary duty. The underlying factual question whether Schwent should have filed a lawsuit against his employer constitutes a fact question reviewed for clear error. Clear error exists when "'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

Federal law requires that ERISA fiduciaries perform "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man

-4-

acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . ." 29 U.S.C. § 1104(a)(1)(B). The ERISA prudent person standard is an objective standard. Roth v. Sawyer-Cleator Lumber Co., 16 F.3d 915, 917 (8th Cir. 1994). When a fiduciary fails to satisfy the prudent person standard, the fiduciary may bear personal liability for losses to the plan resulting from the breach of fiduciary duty. Id.

Schwent served as the designated health plan administrator and trustee within the meaning of 29 U.S.C. §§ 1002(16)(A) and 1103(a). Schwent therefore served as an ERISA fiduciary with respect to the health plan. See 29 C.F.R. § 2509.75-8(D-3).

The Secretary argues Schwent breached his fiduciary duty by not bringing a lawsuit against Lenco for the unpaid health claims. At the district court, Schwent responded that bringing a lawsuit against Lenco would not have been prudent for the following reasons:

> (1)    a lawsuit would have resulted in vendors insisting on their bills being paid before providing additional materials or services;

> (2)    a lawsuit would have triggered a default on Lenco's primary loan, and the bank had first priority on Lenco's assets in any event;

> (3)    a lawsuit would have been cumulative in that several employees had already filed such a suit, and Schwent determined that the legal fees and expenses of a second lawsuit would deplete the company's resources;

> (4)    a lawsuit would have generated bad publicity for Lenco and would have resulted in health care providers refusing to treat Lenco employees; and/or

-5-

(5) a lawsuit would have forced Lenco into bankruptcy even earlier.

The district court rejected Schwent's arguments stating that evidence did not support his arguments. Furthermore, the district court determined that under this court's decision in Martin v. Feilen, 965 F.2d 660, (8th Cir. 1992), the Secretary did not need to demonstrate that Schwent would have won the lawsuit.[4] The district court nevertheless found that if Schwent had filed suit on behalf of the health plan, "the health plan had a strong probability of prevailing." Accordingly, the district court concluded that Schwent breached his fiduciary duty because he did not file a lawsuit on the health plan's behalf against Lenco.[5]

_____

[4]In Martin, this court ruled that the Secretary may sue a fiduciary for breach of duty for a decision not to pursue a derivative claim. 965 F.2d at 667. This court required the Secretary to prove a "breach of the ESOP fiduciaries' duties, and that the derivative suit would have prevailed." Id. (emphasis in original). The district court distinguished Martin from this case on the basis that Martin concerned a shareholder derivative suit that could be brought under state common law. Because this case did not present an allegation that Schwent should have pursued a shareholder derivative action, the district court concluded that the Secretary did not need to prove Schwent would have prevailed in a lawsuit against Lenco. We disagree with the district court's interpretation of Martin.

[5]Although the district court took judicial notice of the Employee Stock Ownership Plan ("ESOP") portion of this case in deciding that a lawsuit would not have precipitated an earlier filing of bankruptcy, we will only consider the evidence and testimony from the health plan portion of this case. While we do not rule on the propriety of the district court's decision to take judicial notice of the ESOP portion of this case, we note, in passing, that this practice appears unfair because the district court knew Schwent's attorney would not appear for the ESOP portion of the case. The first two days of the trial related to Schwent while the remaining thirteen days of the trial related to the Secretary's suit against Mercantile Bank for breach of its fiduciary duty to Lenco's ESOP during Ford's leveraged buy-out. The Secretary contended that the ESOP overpaid for Lenco stock bought a day after the ESOP sold its stock to Ford. See Herman v. Mercantile Bank, N.A., No. 1:91CV00011 (E.D. Mo. Feb. 23, 1997). At the conclusion of the health plan portion of the case, the district court on the record

We conclude that in order to prove a breach of fiduciary duty for failure to pursue any lawsuit, the Secretary must prove a lawsuit would be successful and advantage the beneficiaries of the plan. If a fiduciary won a judgment in a lawsuit against an employer but remained unable to collect on that judgment, the lawsuit would waste the resources of both the plan and the employer. Therefore, in this case the Secretary needed to prove that if Schwent pursued a lawsuit, the health plan would have benefitted.

After a review of the record, we conclude the district court clearly erred in finding a lawsuit would have been prudent and successful in decreasing the amount of unpaid medical claims. The evidence does not support the Secretary's contention that a lawsuit would have in any way benefitted the health plan. The Secretary did not offer any expert testimony that Lenco would have paid additional funds into the health plan. In fact, the evidence at trial showed that the restrictions from Lenco's loan agreement with Midland resulted in a severe cash crunch. At the time in question, Lenco showed some increase in profits but the actual cash flow available did not improve.

In addition, Lenco began experiencing severe financial difficulties in November 1986 and entered bankruptcy on June 20, 1989. Accordingly, the health plan would not have won a collectable judgment. A lawsuit would have taken much too long to benefit the health plan. In this case, consisting of many of the same litigants, the district court entered the lawsuit's final judgment on February 28, 1997, over six years from the date of filing.

Moreover, the evidence shows that Schwent in fact increased the amount of money Lenco contributed. Schwent's actions slowly but steadily decreased the amount

---

stated that if the district court reopened the health plan evidence, it would be by formal request and upon notification of counsel, which did not occur. Tr. Vol. III at 98-100, 112-14.

of unpaid medical claims during this time period. At the close of the health plan's 1987 fiscal year, the health plan had $341,906 in unpaid medical claims. On June 20, 1989, when Lenco went into bankruptcy, $143,166 in health plan claims remained unpaid. Schwent succeeded in decreasing significantly the amount of unpaid medical claims with his entreaties to Ford. For example, on two occasions, Schwent convinced Ford to make personal loans of $25,000 which went directly to paying health care claims. In addition, Schwent testified that he "could see light at the end of the tunnel as far as getting those payments." Tr. Vol. 1 at 165. Schwent stated that Ford remained optimistic about changing the financing arrangement which would in turn allow the health plan to be fully funded.

In light of the above situation, even if a lawsuit would possibly succeed in increasing the amount Lenco contributed, a prudent plan administrator in Schwent's situation could reasonably decide against filing a lawsuit. Furthermore, in our view, a lawsuit would have made health care providers and vendors less willing to provide materials and services. Schwent testified he did not consider a lawsuit because a suit against Lenco in the small city where it is located would have been well publicized throughout the community. Schwent further stated that health care providers would have expected cash from their Lenco patients if he sued Lenco for unpaid medical claims. In all likelihood, the business community would have reacted negatively to a lawsuit by a vice-president of Lenco because the lawsuit would show that insiders of Lenco had lost faith in Lenco's ability to meet its obligations. In turn, the lawsuit could have precipitated earlier bankruptcy proceedings.

We consider prudent the decision by Schwent to not file a lawsuit based upon the above reasons. Moreover, the evidence did not show that the health plan would have likely collected on any judgment in a lawsuit. Therefore, Schwent did not breach his fiduciary duty to the health plan. Because we conclude that Schwent did not breach his fiduciary duty, we do not reach Schwent's other arguments.

### III. CONCLUSION

We conclude that to establish a breach of fiduciary duty for the failure of Schwent to institute a lawsuit against Lenco, the Secretary needed to prove that such suit would have succeeded and benefitted the plan participants. The evidence is to the contrary. The trial court's finding on this issue favorable to the Secretary cannot stand. We, therefore, reverse the district court's judgment against Schwent and remand for the district court to enter judgment to dismiss the case.

A true copy.


Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.