# United States Court of Appeals

### For the Eighth Circuit

_____

No. 21-2641
_____

Corey Skelton, individually and as Trustee for the next of kin of Decedent Beth
Michelle Skelton

*Plaintiff - Appellee*

v.

Radisson Hotel Bloomington; Water Park of America

*Defendant*s

Reliance Standard Life Insurance Company, a Member of the Tokio Marine Group

*Defendant - Appellant*

Marc L. Messina

*Defendant*

------------------------------

Department of Labor

*Amicus on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 16, 2022
Filed: May 6, 2022

_____

Before GRUENDER, BENTON, and ERICKSON, Circuit Judges.

_____

BENTON, Circuit Judge.

Corey Skelton sued Reliance Standard Life Insurance Company for mishandling his wife's enrollment for supplemental life insurance and then declaring her ineligible for it after she died. The district court[1] granted him summary judgment, finding the company violated the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* Having jurisdiction under 28 U.S.C. § 1291, this Court affirms.

I.

Corey Skelton was married to Beth M. Skelton ("Skelton"), a corporate group sales manager at Davidson Hotels LLC.

Davidson operated a welfare benefits plan ("Plan") that provided dental, health, life and long-term disability benefits for employees. Davidson's documents identified it as the "Plan Administrator" with general "discretionary authority to interpret the Plan," and determine eligibility for coverage and eligibility for claims.

Davidson entered a policy contract ("Policy") with Reliance Standard Life Insurance Company to provide life insurance for the Plan. Reliance "serve[d] as the claims review fiduciary with respect to the [life] insurance policy and the Plan." The Policy granted it "final and binding" "discretionary authority to interpret the Plan . . . and to determine eligibility for benefits."

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

Reliance also had sole discretion to determine eligibility for supplemental life insurance under various circumstances, including when an employee sought it more than 31 days after starting employment. In this circumstance, the employee was required to submit an Evidence of Insurability ("EOI"), demonstrating "proof of good health." Insurance would not become effective until Reliance "approve[d] [that] required proof of good health."

However, if an applicant for supplemental life insurance was changing coverage amounts within 31 days of "a life event change (such as marriage, birth, or specific changes in employment status)," then the applicant was *not* required to submit an EOI and receive Reliance's approval.

Davidson collected premiums from employees and remitted them to Reliance in one monthly check for all the premiums due, along with a worksheet listing only the total number of employees insured. This is called "bulk billing." Reliance's system did not collect information that would allow it to assess whether Davidson sent mistakenly billed premiums to Reliance.

When Skelton began work at Davidson in April 2013, she was automatically enrolled in a $100,000 basic life insurance policy under the Plan, but she did not select supplemental insurance. When Skelton's husband regained custody of his son—her stepson—in November 2013, she asked Davidson's Human Resources Director if changing custody of her stepson qualified as a life event that allowed her to elect supplemental life insurance. The Director told her it did (although Reliance now avers that it does not unless the employee adopts the child). On November 22, 2013, Skelton applied for the maximum supplemental life insurance available, $238,000, for herself.

In response, Reliance sent Skelton a document, titled "Important Team Member Instructions," stating that Skelton "enrolled in coverage . . . that requires proof of good health," requiring Skelton "prove Evidence of Insurability." **Instructions**, DCD 168-1 at 55. The document's letterhead had both Reliance's and

Davidson's logos. It said, "The completed EOI should be returned directly to Reliance" at its mailing address. It stated, "If there is required information missing from the form, Reliance . . . will return it to you for completion." The document explained:

> Until your application . . . is approved by the Medical Underwriting Department, the amount of your . . . Supplemental Life Insurance coverage that is subject to evidence of insurability will not go into effect. *You will not be charged premiums for amounts subject to evidence of insurability until the approval is granted. . . .* If you have any questions regarding the EOI form . . . please contact Reliance['s] Customer Care Team.

*Id.* (emphasis added). The parties dispute whether Skelton submitted the EOI to Reliance. But she never received any notice that the form had or had not been received during her time at Davidson.

Instead, Skelton received a "Benefit Verification / Deduction Authorization" document listing her as having "Supplemental Term Life" insurance under the "Reliance Voluntary Life" option, effective January 1, 2014. "Regain[ing] custody of dependent child" was listed as the "Reason for Completing Form."

In February 2014, Skelton went on medical leave and began receiving disability benefits. Davidson notified her that she was required to pay premiums to maintain her benefits while on disability. Skelton paid premiums from February through May 2014. In July 2014, Davidson informed Skelton she was past due on her premiums for May 24, 2014, through July 20, 2014.

In March 2015, Reliance sent Skelton a notice that she might be eligible to have the premiums waived based on her disability. Skelton applied for and received a waiver of her premiums, retroactive to March 1, 2014.

On December 6, 2015, Skelton died. Her husband, Plaintiff-Appellee Corey Skelton, contacted both Davidson and Reliance about her supplemental life insurance. On March 28, 2016, Davidson replied that Skelton's supplemental life insurance had been "in a pending status" ever since she applied because, "per Reliance Standard, there are no records that the completed EOI form was ever received." Davidson acknowledged it sent letters "incorrectly" listing "pending premiums" that "should not have been requested until coverage was actually approved by Reliance Standard's Medical Underwriting Department." Davidson enclosed a check for $133.12, the "maximum amount" of premiums that could have been incorrectly charged to Skelton between February and August 2014.

Corey Skelton sued Davidson, Reliance, and other parties. Count II of his Second Amended Complaint alleged that Davidson and Reliance violated ERISA by mishandling his wife's supplemental life insurance enrollment. Davidson settled with him, paying $250,000, with $175,000 for the ERISA claim. He and Reliance then filed cross-motions for summary judgment. The district court denied Reliance's motion and granted his, finding Reliance breached its fiduciary "duty to ensure its system of administration did not allow it to collect premiums until coverage was actually" effective. The district court subtracted the amount Davidson paid for the supplemental life insurance claim, and ordered Reliance to pay damages of $63,000, plus pre- and post-judgment interest. Reliance appeals.

This Court reviews de novo a grant of summary judgment, including whether a breach of ERISA fiduciary duty occurred. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc); *Herman v. Mercantile Bank, N.A.*, 137 F.3d 584, 586 (8th Cir. 1998).

II.

Reliance had a fiduciary role in Skelton's attempt to seek supplemental life insurance.

Corey Skelton sued under 29 U.S.C. § 1132(a)(1)(B), which allows an ERISA-plan participant or beneficiary to recover benefits due under the plan, and under § 1132(a)(3), which allows a participant to obtain "appropriate equitable relief" to redress ERISA fiduciary violations. *See id.* § 1132(a). The parties agree that ERISA applies to the Plan. However, Reliance argues that it did not have a fiduciary duty relevant to this dispute because Davidson collected the premiums before forwarding them. Reliance is wrong.

Under ERISA, an entity "is a fiduciary with respect to a plan" if it "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A); *see Maniace v. Com. Bank of Kansas City*, 40 F.3d 264, 267 (8th Cir. 1994) ("[D]iscretion is the benchmark for fiduciary status.").

However, "'[f]iduciary status . . . is not an all or nothing concept. A court must ask whether a[n] [entity] is a fiduciary with respect to the particular activity in question.'" *Maniace*, 40 F.3d at 267 (cleaned up), *quoting Kerns v. Benefit Tr. Life Ins. Co.*, 992 F.2d 214, 217 (8th Cir. 1993). "[A]n insurer who is not the plan administrator has no ERISA fiduciary duty" for a particular activity "unless the policy documents or the insurer's past practices have created [such] an obligation." *Kerns*, 992 F.2d at 217.

The Policy makes Reliance a fiduciary for Skelton's eligibility and enrollment in supplemental life insurance.

The Policy designated Reliance as the "claims review fiduciary," with "final and binding" "discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits." Policy at 11.0, DCD 168-1 at 25; *see Prudential Ins. Co. of Am. v. Doe*, 140 F.3d 785, 789-90 (8th Cir. 1998) (holding insurer was fiduciary where it "interpreted the language of the plan and reviewed and decided" the claim at issue); *Kerns*, 992 F.2d at 216-17 (recognizing an insurance company is a fiduciary where it performs a claims "review function"); *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 716-17 & n.5, 720-24 (8th Cir. 2014)

(holding insurer, with "discretionary authority to interpret the terms of the Plan and to determine eligibility" for benefits, was "a plan fiduciary" such that plaintiff should be allowed to bring § 1132(a)(3) claims for breaches of fiduciary duties).

Reliance also had exclusive discretion to determine eligibility for supplemental life insurance when an employee sought it more than 31 days after first becoming eligible, as Reliance contends Skelton did. *See* **Policy** at 1.1, 4.0, DCD 168-1 at 11, 16 (requiring applicants for insurance who "pay[] part of the premium" must "apply in writing for the insurance to go into effect," and stating that it would not become effective until Reliance "approve[d] any required" EOI "proof of good health"); *see also* **Plan Administrator's Guidance** at 3, DCD 190-1 (stating that whether "employees are eligible to enroll" is "subject to final determination by Reliance"). The "Important Team Member Instructions" confirmed Reliance's exclusive discretion—and status as a fiduciary—by stating she sought "coverage . . . that requires proof of good health" and her coverage would not be effective until her application was "approved by [Reliance's] Medical Underwriting Department."

The ability to determine Skelton's eligibility for supplemental insurance made Reliance a fiduciary for Skelton's application process. *See **Aetna Health Inc. v. Davila***, 542 U.S. 200, 220 (2004) (stating entities responsible for "mak[ing] discretionary decisions regarding eligibility for plan benefits . . . must be treated as fiduciaries"); ***Fink v. Union Cent. Life Ins. Co.***, 94 F.3d 489, 492 (8th Cir. 1996) (finding employer, not insurer, was relevant fiduciary where it alone "was responsible for determining employee eligibility").

Reliance, however, tries to distinguish enrollment *versus* eligibility and claims determinations, arguing it had "fiduciary responsibilities [for] eligibility and claims decision-making" but not for "enrollment." Reliance's own documents show this is a false dichotomy. The Policy defines an "Insured" as "a person who meets the eligibility requirements of the Policy and is enrolled for this insurance"—but never defines "enroll." Instead, the Policy states that a person in Skelton's situation "will become insured" "the first of the month following the date [Reliance] approve[s]

[the] required proof of good health." *Id.* at 4.0. This means enrollment occurs automatically as a result of Reliance's eligibility decision. Thus, by the Policy's own terms, Davidson had a minimal role in effecting Skelton's enrollment, and Reliance was the relevant fiduciary. Reliance's own guidance shows that it managed enrollment. *See* **Plan Administrator's Guide** at 7, DCD 190-1 (stating, "Employees who are applying for amounts subject to our approval must provide proof of good health," and may do so "by logging onto *Reliance Standard's online enrollment system*" (emphasis added)); *id.* at 8 ("[*E*]*nrollment material* for late applicants, or applications for amounts in excess of the [guaranteed issue] amount . . . can be mailed or . . . emailed to . . . Reliance." (emphasis added)).

Reliance provides no evidence that Davidson, not it, was the enrollment fiduciary. Reliance points to the "Records Maintained" language of the Policy: "[Davidson] must maintain records *of all Insureds*. Such records must show the essential data of the insurance, including new persons, terminations, changes, etc. This information must be reported to us regularly." *Id.* at 3.0 (emphasis added). However, this provision applies only to "Insureds." As explained above, Reliance determined enrollment for employees in Skelton's position. Until it found the employee eligible, she was not enrolled and not an "Insured"—as Reliance itself implies in arguing that Skelton is not eligible for benefits. Thus, the entire "Records Maintained" provision does not apply here because Skelton was not an "Insured" for supplemental life insurance. Similarly, Reliance instructed that Davidson was responsible for "[e]nrolling *newly eligible* employees into the plan." **Plan Administrator's Guide** at 7, DCD 190-1 (emphasis added). But this also does not apply: Skelton was not "newly eligible" because, as Reliance asserts, stepson custody was not a qualifying event that made her newly eligible and able to enroll in supplemental life insurance without EOI approval by Reliance. Moreover, the record does not suggest that the parties deviated in practice from these Policy-assigned roles.

To be sure, mere receipt of bulk-billing payments or "[c]ustody of plan assets" does not automatically make an insurer a fiduciary. *See **Gordon v. CIGNA Corp.**,*

890 F.3d 463, 472-73, 476 (4th Cir. 2018) (quotations omitted). Instead, the plan documents and the insurer's acts determine whether it is a fiduciary for the relevant function. *See Kerns*, 992 F.2d at 217. Here, the Policy and Reliance's practices make it a relevant fiduciary.

This is not the run-of-the-mill case where the plan's assigned roles and an insurer's minimal interaction with a participant produce no fiduciary role. *See Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 103-04 (2d Cir. 2020) (finding insurer not fiduciary where plan did not assign it the role of "assessing [applicant's] eligibility for and enrolling" her in plan, and the insurer had minimal interaction with her); *Kerns*, 992 F.2d at 217 (finding insurer not fiduciary for particular function where plan documents assigned no such role and it took any relevant action); *Coleman*, 969 F.2d at 62-63 (finding insurer not fiduciary where problem "resulted not from any fault of [the insurer], but from the failure of [the] employer to fulfill its obligations"). Nor is this a case where the insurer never completed the condition precedent that would trigger its fiduciary duty. *See Shields v. United of Omaha Life Ins. Co.*, 527 F. Supp. 3d 22, 37 (D. Me. Mar. 16, 2021) (concluding plaintiff failed to establish fiduciary duty because insurer never made the requisite "insurability determination"), *appeal docketed* No. 21-1290 (1st Cir. April 20, 2021); *id.* (rejecting plaintiff's attempt to distinguish district-court cases "where responsibility for the faulty enrollment [also wa]s not tied to the insurer").

Reliance had a fiduciary role as the entity that determined eligibility and conducted enrollment.

### III.

Reliance breached its fiduciary duties of prudence and loyalty by failing to maintain an effective enrollment system.

ERISA provides that a fiduciary must:

> discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries . . .
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . .

29 U.S.C. §1104(a)(1). These express terms do not limit the duties of an ERISA fiduciary; instead, "the common law of trusts . . . define[s] the general scope their authority and responsibility." ***Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.***, 472 U.S. 559, 570 (1985); *see also* ***Firestone Tire & Rubber Co. v. Bruch***, 489 U.S. 101, 110 (1989) ("[C]ourts are to develop a federal common law of rights and obligations under ERISA-regulated plans." (quotations omitted)).

First, ERISA fiduciaries have a duty of prudence—to exercise "care and skill as a man of ordinary prudence would." **Restatement (Second) of Trusts § 174** (1959); *see also* **28 U.S.C. § 1104(a)(1)(B)** (requiring fiduciary act "with the care, skill, prudence, and diligence . . . that a prudent man acting in a like capacity and familiar with such matters would use"); ***Dormani v. Target Corp.***, 970 F.3d 910, 913 (8th Cir. 2020) ("[Section 1104(a)(1)] import[s] the fiduciary duties of prudence and loyalty from the common law of trusts.").

Reliance had a duty of prudence in its administration of Skelton's eligibility and enrollment process. A reasonably prudent insurer—assigned the fiduciary roles for determining eligibility and enrollment—would use a system that avoids the employer and insurer having different lists of eligible, enrolled participants. *See, e.g.*, ***Lanpher v. Metro. Life Ins. Co.***, 50 F. Supp. 3d 1122, 1125-26 (D. Minn. 2014) (stating insurer maintained a triple-safeguard system for enrollment, including "sending a monthly spreadsheet with the list of employees approved and for which

insurance plan" to employer, and "carbon copying [employer] on approval letters to participants").

Reliance, however, maintained a haphazard system of ships passing in the night. It sent Davidson a monthly status report listing pending applications, but the report tracked only "employees who submitted EOI requests," and not those seeking enrollment. **Reply Br.** at 10. As a result, Reliance did not communicate to Davidson which employees sought coverage but still needed to submit an EOI. Moreover, Reliance did not provide a list of employees it deemed eligible and enrolled. Thus, Davidson had no way to know if an employee who might qualify for enrollment without an EOI—as Skelton would if stepson custody were a qualifying event—had been declined for a separate reason or still needed to submit an EOI.

Davidson, meanwhile, completed a worksheet listing the total number of employees being insured and remitted a bulk check, but never provided a list of the employees whom it thought were enrolled for what coverage, or from whom it received premiums. *See* **Reliance MSJ Br.** at 6, DCD 184 (explaining worksheet). Thus, neither entity ever learned which employees the other one thought were or were not enrolled.

This ineffective system violated Reliance's duty of prudence. *See **Phillips v. Kennedy***, 542 F.2d 52, 55 n.8 (8th Cir. 1976) (rejecting, in pre-ERISA trust pension case, that estoppel required fund to pay ineligible pensioner merely because he previously made contributions—but stating, "[I]t is the duty of the trustees to verify on a regular basis the eligibility of those for whom contributions are being made. The breach of *that duty* might well expose the trustees to personal liability in an appropriate case" (emphasis added)); ***Frye v. Metro. Life Ins. Co.,*** No. 3:17-CV-31-DPM, 2018 WL 1569485, at *3 (E.D. Ark. Mar. 30, 2018) (finding breach of duty where insurer's "procedures had a structural administrative defect" that "allowed employees like [the plaintiff] to pay for coverage for dependents who either are ineligible or become ineligible").

Second, as a fiduciary for determining eligibility and enrolling eligible individuals—while ultimately receiving employees' premiums—Reliance had a duty of loyalty to verify that those premiums came only from eligible, enrolled employees. "ERISA fiduciaries must comply with the common law duty of loyalty, which includes the obligation to deal fairly and honestly with all plan members." *Shea v. Esensten*, 107 F.3d 625, 628 (8th Cir. 1997). This also includes the "duty not to profit at the expense of the beneficiary." **Restatement (Second) of Trusts § 170 cmt. a**.

Reliance violated this duty. The record shows that Skelton paid premiums for supplemental life insurance and Davidson received those payments. *See* **HR Letter**, DCD 179-10 (stating Skelton was incorrectly charged premiums for supplemental life insurance); **4/14/14 Premiums Due Letter** at 2, DCD 179-1 (listing total premiums due as $821.97, including premiums for supplemental life insurance); **Check**, DCD 168-2 at 26 (paying $821.97 for "Skelton Insurance Premium" to the order of Davidson); **Corey Skelton Aff.** ¶ 4, DCD 178-3 (stating Skelton "paid the premiums for the supplemental life insurance by personal check" while on disability before she received the waiver).

There is no genuine issue of material fact that Reliance then received Skelton's premiums from Davidson. In its own interrogatory responses, Reliance stated that Davidson calculated premiums "based on an agreed upon rate" and sent the premium payments by "check" to Reliance. **Reliance Interrog. Resp. ¶ 4**, DCD 168-1 at 41; *id.* ¶ 5 ("Premiums were remitted through the employer."). This process was conducted "[o]n a monthly basis." **Reliance MSJ Br.** at 6, DCD 184. Reliance further admitted that it did not know if it received Skelton's supplemental life insurance premium payments because "the names of individual participants are not included with the premium payments." **Reliance Interrog. Resp.** ¶ 16; *see also* **Reliance MSJ Br.** at 6, DCD 184 (acknowledging that due to the "limited information" produced by Reliance's system with Davidson, Reliance "would not know for whom premiums were being sent or whether it was erroneously calculated by Davidson").

Reliance argues it did not receive Skelton's improper premiums, quoting the district court's statement that "[w]hat is lacking in the record . . . is whether the amounts mistakenly billed and paid for by [Skelton] . . . were forwarded to Reliance." However, the district court did not try to resolve this question. *See* **Mem. Op.** at 17-19, DCD 245 (finding Reliance used a "flawed" "system" that caused Skelton "to pay premiums for insurance coverage for which she was never approved," so "Reliance breached its fiduciary duty" regardless of whether it received her premiums).

The record establishes that:  (1) Skelton paid her premiums, (2) Davidson received them, (3) Davidson remitted all employee premiums to Reliance through a monthly check, and (4) Reliance had no way to tell if Skelton's payments were not remitted.  Reliance presented no evidence that Davidson withheld Skelton's payments or that it did not receive some employees' premiums.  The only reasonable inference is that Reliance received Skelton's supplemental life insurance premiums in Davidson's monthly check.  Where one party presents circumstantial evidence supporting only one reasonable inference, the opponent cannot establish a genuine issue of material fact simply by demanding more evidence.  *Cf.* ***United States v. Hirani***, 824 F.3d 741, 747 (8th Cir. 2016) (rejecting argument that "it was error to consider circumstantial evidence" and not require direct evidence for "clear, unequivocal, and convincing" denaturalization standard at summary judgment).

By receiving Skelton's premiums without giving her a corresponding benefit of coverage—while serving as a fiduciary for her eligibility and enrollment—Reliance profited at her expense because it avoided any financial risk of having to pay coverage for her.  Thus, Reliance breached it duty of loyalty.  *See* **Restatement (Second) of Trusts § 170 cmt. a** (stating the duty of loyalty includes the "duty not to profit at the expense of the beneficiary"); ***Silva***, 762 F.3d at 723 ("It was arguably fraudulent for [insurer] to collect premiums from a[n] employee who, [it] now argues, never had an approved policy."); *cf.* ***Varity Corp. v. Howe***, 516 U.S. 489, 506 (1996) (finding fiduciary violated duty of loyalty by "deceiving [the] plan's

beneficiaries in order to save the employer money *at the beneficiaries' expense*" (emphasis added)).

This conclusion hinges on the fact that the Policy and Reliance's own acts assigned it a fiduciary duty, which it breached; Reliance did *not* become a fiduciary merely by receiving premiums from an ineligible employee. *See Gordon*, 890 F.3d at 476 (finding insurer—which conducted only back-end claims review, had no further document-assigned fiduciary role, and did not assume one through any acts—was not a fiduciary for notifying employee of outstanding EOI despite receiving his improper premiums).

Most importantly, Reliance told Skelton she would not pay premiums until it approved her application, but then took her premiums without approving her application—profiting on its broken promise. *See* **Instructions**, DCD 168-1 at 55 ("Until your application for . . . Supplemental Life Insurance coverage is approved by [Reliance's] Medical Underwriting Department . . . [y]ou will not be charged premiums for amounts subject to [EOI]."). Misleading an ERISA-plan participant has consequences. *See, e.g.*, *Varity*, 516 U.S. at 506 ("[L]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA." (quotations omitted)).

Reliance cannot insulate itself by failing to communicate with Davidson about enrollment—which Reliance controlled—while having Davidson remit ill-gotten premiums. ERISA seeks "to protect . . . the interests of participants in employee benefit plans and their beneficiaries" and to "increase the likelihood that [they] receive their full benefits." **29 U.S.C. §§ 1001(b), 1001b(c)(3)**. This Circuit has emphasized that allowing plaintiffs to seek full recovery for breach of fiduciary duty "is so important" because this eliminates the "'perverse incentive[]'" for fiduciaries to "'enjoy essentially risk-free windfall profits from employees who paid premiums on non-existent benefits but who never filed a claim for those benefits.'" *Silva*, 762 F.3d at 725, *quoting McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 183 (4th Cir. 2012)). Allowing an insurer to use "a compartmentalized system to escape

responsibility" would undermine ERISA's purposes. *See **Salyers v. Metro. Life Ins. Co.***, 871 F.3d 934, 940 (9th Cir. 2017) (quotations omitted).

Indeed, allowing a fiduciary to escape liability because it designed an enrollment system that ensured it would not know it was collecting "premiums on non-existent benefits" would endorse willful blindness—and the exact "perverse incentive" this Circuit has decried. *See generally **Patterson v. Reliance Standard Life Ins. Co.***, 986 F. Supp. 2d 1140, 1150 (C.D. Cal. 2013) ("Reliance Standard did not conduct any such investigation and only investigated the eligibility of Ms. Dietrich for supplemental life insurance coverage after her death."); ***Cho v. First Reliance Standard Life Ins. Co.***, 852 Fed. Appx. 304, 305 (9th Cir. 2021) (holding Reliance liable where employer erroneously collected premiums from ineligible person for over a year despite unsubmitted EOI); *cf.* ***Chao v. Merino***, 452 F.3d 174, 182 (2d Cir. 2006) (stating, in ERISA breach-of-fiduciary-duty case, that under the duty of prudence, "If a fiduciary was aware of a risk to the fund, he may be held liable for failing to investigate fully the means of protecting the fund from that risk").

In sum, Reliance had fiduciary roles, duties to Skelton stemming from those roles, and it breached those duties. The district court properly granted summary judgment to Plaintiff Corey Skelton, holding Reliance liable for the supplemental life insurance claim. Because Davidson paid $175,000 to settle that claim against it, the district court properly calculated that Reliance owes $63,000—the difference between the total $238,000 policy amount Skelton had sought and the amount Davidson already paid.

IV.

Separate from recovery under § 1132(a)(3) for breach of fiduciary duty, Corey Skelton also seeks recovery under 29 U.S.C. § 1132(a)(1)(B). This relief requires that Reliance owe him benefits, which in turn requires Skelton to have been enrolled in the supplemental life insurance. In support of his argument, he asserts Skelton

should have automatically received approval and did not have to submit an EOI because he had regained custody of his stepson.

However, § 1132(a)(1)(B) requires claimants exhaust by appealing internal decisions, and the district court found that Corey Skelton failed to demonstrate exhaustion in the summary judgment record. On appeal, he identifies no evidence to challenge that finding. This Court need not address the merits of his argument. *See* **Mem. Op.** at 11-12, DCD 245; ***Chorosevic v. MetLife Choices***, 600 F.3d 934, 941 (8th Cir. 2010).

* * * * * * *

The judgment is affirmed.

_____